WILLIAM E. TAYLOR et al., Executors, etc., Appellants, v. MARIA DODD et al., Respondents.

While the general rule is that the personal estate of a testator is to furnish the fund for the payment of legacies, it may be entirely exonerated, or the real estate may be made to aid, if there be express directions to that effect in the will, or if that be the clear intent to be gathered from its provisions.

The will and codicil of S. gave certain specific legacies, also a large number of general legacies; some, by the terms of the gifts, without a prescribed time of payment, and some payable at periods varying from one to ten years. No provision was made as to debts. The will directed the permanent investment of $7,000, the income to be applied to the improvement of the testator's cemetery lot, under the direction of two of the executors; it contained, also, certain specific devises. His executors were empowered to sell any and all portions of the real estate as should, in their discretion, be to the advantage of his estate, but not to sell any portion while it was producing good and reasonable income, until necessary for a final settlement and distribution of the estate. S. died leaving a large amount of personal property, but no more than enough, including the articles specifically bequeathed, to pay debts and expenses of administration. In an action for a construction of the will and codicil, held, that it was the intent of the testator to make the real estate aid the personal in discharging the legacies, as there was substantially no need of money, and no other object could have been in view in giving to the executors power of sale, save to raise money for the payment of legacies; also, held, that the specific legatees were entitled to their gifts, without liability to abatement for the payment of debts.

(Argued June 19, 1874; decided September 22, 1874.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, reversing judgment entered upon the decision of the court at Special Term, and finally adjudging and determining the rights of the parties upon the issues. (Reported below, 2 N. Y. S. C. R. [T. & C.], 88.)

This action was brought to obtain judicial construction of the last will and testament of Joshua A. Story, late of Cooperstown, Otsego county, deceased. He died leaving a last will and testament, and a codicil, executed the same day, of which the following are copies:

" This is the last will and testament of Joshua H. Story, of the town and county of Otsego, State of New York, made and published this first day of April, one thousand eight hundred and seventy-one:

" First. I give and bequeath to George S. Bradford my stone store on the south side of Main street, in the village of Cooperstown, and ten thousand dollars ($10,000) in money, out of my estate.

" Second. I give to Mrs. Sophia Antisdel five thousand dollars ($5,000).

" Third. I give to Mrs. Maria Dodd five thousand dollars ($5,000).

" Fourth. I give to Mrs. Mary Jane Fargo two thousand dollars ($2,000).

" Fifth. I give to Mrs. George S. Bradford three thousand dollars ($3,000).

" Sixth. I give to George Story, my brother, the sum of ten thousand dollars ($10,000), and the use of the Miller farm during his lifetime.

" Seventh. After the death of my brother George I give the Miller farm to my sisters or their heirs.

" Eighth. I give my gold watch and hair chain to my brother George.

" Ninth. I give my black walnut locker to George S. Bradford.

" Tenth. I give to Mrs. Mary Taylor Smith the piano in the Beggs house.

" Eleventh. I give to Mrs. George S. Bradford the piano now in her room.

" Twelfth. I give to my brother George the teams driven commonly by Henry Becker and Martin Duffy; also the wagons, harnesses and all farming utensils, robes, etc., belonging to the farm aforesaid.

" I give to my sister Fanny Hall the rent of the Antisdel house for the term of two years, provided she occupies it personally. Afterward she is to be charged two hundred and

fifty dollars per year rent, if she continues to reside there, and no more.

"I give and bequeath to Henry W. Williams the lot now occupied by him; also five hundred dollars in cash, to be paid out of my estate at the end of eight years, without interest.

"I give to John H. Jackson the sum of three hundred dollars, to be paid at the end of two years, without interest.

"I also give to Ezra W. Smith the sum of five hundred dollars, to be paid at the end of two years.

"I also give to Henry W. Merchant the sum of one thousand dollars for services and favors done me, to be paid at the end of two years, without interest.

"I give to Mrs. B. F. Beadle the sum of one hundred dollars, for the express purpose of purchasing a dress for her own wear, in consideration of her kindness to me during my sickness and at other times.

"I give to Mrs. Sophia Williams the sum of two hundred dollars, to be paid at the end of two years.

"I give to Emily Wells twenty-five dollars out of my estate.

"I give to Henry Becker one hundred ($100), to be paid at the end of eighteen months.

"I give to Mrs. Mary Taylor Smith my writing desk.

"I desire to have all my letters and private papers placed in the hands of my brother George.

"I give to Mary Pennington, daughter of F. G. Pennington, the sum of one hundred dollars, to be paid at the end of eighteen months.

"I give to Mrs. John Bailey, formerly Mrs. McNeil, the sum of one hundred dollars, to be paid at the end of eighteen months.

"I give and bequeath to Mrs. Ellen McNamee the sum of three thousand dollars, to be paid at the end of three years.

"I desire to have the sum of seven thousand dollars permanently invested, and the income to be applied to the improvement of my cemetery lot, under the direction of

George Story and Mrs. Eliza Taylor. All the bodies of deceased relatives to be removed at the cost of the estate.

"JOSHUA H. STORY. [L. s.]

"Signed, sealed, published and declared by the said Joshua H. Story, the testator, to be his last will and testament, in presence of us who, at his request and in his presence, have hereunto subscribed our names in his presence and in presence of each other.

"GEORGE W. ERNST,
                of Cooperstown, N. Y.

"BENJ. F. BEADLE,
                of Cooperstown, N. Y.

"I hereby appoint William E. Taylor and Eliza M. Taylor, his wife, and George Story, executors of this my last will and testament.

"JOSHUA H. STORY. [L. s.]

"Signed, sealed, published and declared by the said Joshua H. Story, the testator, to be his last will and testament, in presence of us who, at his request and in his presence, have hereunto subscribed our names in his presence and in presence of each other, this first day of April, in the year of our Lord, one thousand eight hundred and seventy-one.

"GEORGE W. ERNST,
                "Cooperstown, N. Y.

"HORACE M. HOOKER,
                "Cooperstown, N. Y.

"This is a codicil to my last will and testament, bearing date this 1st day of April, 1871, and hereto annexed:

"First. I give and bequeath to my executors named in my said will, the sum of $5,000 in trust for my niece Ellen McNamee, wife of George McNamee, to be by them securely invested, and to pay the interest and income therefrom to my said niece, Ellen McNamee, semi-annually or quarterly as the

same may be received or collected by them, for and during ten years next after my decease, and at the expiration of said ten years to pay to said Ellen McNamee, or her heirs, said principal sum of $5,000, with the accumulations thereof, if any, and I hereby revoke the bequest of $3,000 to said Ellen McNamee, contained in my said will, and declare the above bequest in this codicil to be in lieu thereof.

" Second. I hereby authorize my executors named in my said will, and the· survivor or survivors of them, to bargain,· sell and convey any and all such portions, parcels or lots of my real estate as shall in their discretion and judgment be for the best interest and advantage of my estate, but it is my will that such portions of my real estate as is producing a good and reasonable income, shall not be sold nor conveyed by my said executors, until such time shall arrive that no adequate income can be derived therefrom in the judgment of my said executors, or it shall be necessary for a final settlement and distribution of my estate; and it is my will and desire that said· executors, as soon after my decease as practicable, shall map out into lots of suitable size the lots known as the ' Northrop lot,' and the lot of about twenty-one acres, bought of H. N. Robinson and Calvin Graves, and put the same in market for sale. I expressly prohibit my said executors from selling the lot of land on Second street, adjoining hotel lot of W. C. Keyes & Son, and direct that the same shall not in any event be sold by my executors or heirs to said Webster C. Keyes, or his representatives. I hereby give to my said executors full power and authority to execute and deliver all proper deeds of conveyance, sufficient in the law to convey and assure the fee simple of all such real estate as they are authorized to sell, to such person or persons as they sell the same or any part thereof to.

" Witness my hand and seal this 1st day of April, 1871.

"JOSHUA H. STORY. [ L. S. ]

" Signed, published and declared by the above named testator to be a codicil to his said last will and testament, in

presence of us, who, at his request and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses thereto.

" GEO. W. ERNST,

" Cooperstown, N. Y.

" HORACE M. HOOKER,

" Cooperstown, N. Y."

The testator was unmarried, having one brother, George Story, one of the executors and one of the plaintiffs, and three sisters, one of whom, Eliza M. Taylor, is also executrix and plaintiff, and Mary Bradford and Fanny T. Hall, who are defendants in the action — his only heirs at law. The other defendants are either legatees named in the will or are the representatives of parties claiming interest in the estate. The testator died seized of real estate, not specifically devised as such, of the value of $173,808.66, which was subject to mortgages to the amount of $48,845.86. He left, also, personal property, including the articles specifically bequeathed, of the value of $95,000, and was owing debts, exclusive of mortgages, to about $79,000. The expenses of administration have amounted to about $12,000. There were no mortgages upon the real estate which was specifically devised. Under the power of sale contained in the codicil, the executors sold large portions of the real estate, and had received therefor, including rents, the sum of $108,458.17. Of this amount they had paid on account of mortgage liens and interest upon all the mortgages $32,181.56. The real estate remaining unsold, and which they had the power to sell, was estimated to be worth $65,000. Upon this there were mortgage liens of about $16,000. The court upon the trial found " no satisfactory evidence of an intent on the part of the testator to charge his real estate, or any part of it, with the payment of legacies," and held that his real estate was not so charged.

The General Term reversed the judgment entered in accordance with this decision, and adjudged as follows:

" First. All the pecuniary legacies given in and by said

will and codicil are a charge upon the real estate of said deceased, after the payment of the testator's debts, and the expenses of administration from the personal and the proceeds of real estate in the hands of the executors and executrix, and the same are hereby so adjudged accordingly ; and the said executors and executrix are hereby directed to pay and satisfy the said legacies from the proceeds of the sales of real estate in their hands according to the directions contained in the said will and codicil.

" Second. The articles of personal property specifically bequeathed in said will are to be paid and delivered over to the persons named as legatees thereof according to the directions of said will ; and the said executors and executrix are hereby directed to deliver and satisfy the same accordingly.

" Third. The said executors and executrix are also hereby directed to carry out the provisions of said will and codicil as to the use of the Miller farm, and investing the sum of $5,000 in trust for the defendant Ellen McNamee, and the payment of the principal and interest as directed in the first clause of the codicil, all of which provisions are hereby adjudged legal and valid.

" Fourth. The residuum of said estate, real and personal, after the payment of the testator's debts and the expenses of administration and costs, and the payment of all the pecuniary legacies, and satisfying all the specific devises of real estate and the specific bequests of articles of personal property, descends to the heirs at law of the said testator, to wit, George Story, Eliza M. Taylor, Mary Bradford and Fanny T. Hall, as tenants in common in fee, subject to the power of sale given to the executors by the codicil to said will."

*L. I. Burditt* for the appellants. The legacies are not chargeable on the real estate or the proceeds thereof. (1 Story's Eq., 573 ; *Hoes* v. *Van Hosen,* 1 Comst., 120.) Real estate is not chargeable with the payment of legacies, unless the intent is expressly declared or to be clearly inferred from the will. (*Lupton* v. *Lupton,* 2 J. Ch., 614 ; *Reynolds* v.

*Reynolds*, 16 N. Y., 257 ; *Myers* v. *Eddy*, 47 Barb., 263 ; *Harris* v. *Ely*, 7 Paige, 421 ; *Kinnier* v. *Rogers*, 42 N. Y., 531 ; *Babcock* v. *Stoddard*, 3 N. Y. S. C., 207 ; *Ballard* v. *Goffe*, 20 Pick., 252 ; *Archer* v. *Duncale*, 1 Pet., 588.) The power of sale is permissive only, hence there could be no intention to blend the real and personal property. (*Allen* v. *De Witt*, 3 Comst., 276, 282 ; *White* v. *Howard*, 46 N. Y., 144, 162 ; *Harris* v. *Clark*, 3 Seld., 242.) The title of the real property was in the heirs after the testator's death. (*Kinnier* v. *Rogers*, 42 N. Y., 531, 536 ; *Wright* v. *Trustees, etc.*, Hoff. Ch., 202, 218–221.) An intent to change the character of the estate will not be presumed. (*Allen* v. *De Witt*, 3 Comst., 276.) No acts of the executors, subsequent to the vesting of title in the heirs, can divest their title to the proceeds. (*Kinnier* v. *Rogers*, 42 N. Y., 536 ; *Walker* v. *Denne*, 2 Ves. Jr., 184 ; *Fowler* v. *Depau*, 26 Barb., 224.) The articles specifically bequeathed should be applied in payment of debts if the other personal assets are insufficient. (Williams Exrs., 796, 1174 ; *Knight* v. *Garborough*, 4 Rand., 566 ; *McAllister* v. *Montgomery*, 3 Heyw., 94.)

*Nathaniel C. Moak* for the respondents. The intent of the testator to charge the payment of the legacies upon the real as well as his personal estate sufficiently appears and the intent should be carried out. (*Christie* v. *Phyfe*, 19 N. Y., 344–348 ; *Dubois* v. *Ray*, 35 id., 162 ; *R. C. Ch.* v. *Wacher*, 42 Barb., 42–44 ; *Myers* v. *Eddy*, 47 id., 264 ; *Ripple* v. *Ripple*, 1 Rawle, 386 ; Jarman on Wills, 742, 745 ; *Van Winkle* v. *Van Houten*, 2 Green Ch., 172, 186.) To ascertain the intent the surrounding circumstances may be looked at. (*French* v. *Carhart*, 1 N. Y., 96, 102 ; *Winchester* v. *Osborn*, 62 Barb., 338.) The intent when found to exist in any form, whether express or implied, will be carried out. (*Reynolds* v. *Reynolds*, 16 N. Y., 259 ; *Shulters* v. *Johnson*, 38 Barb., 80 ; *Lupton* v. *Lupton*, 2 J. Ch., 614 ; *Harris* v. *Ely*, 7 Paige, 421 ; *R. C. Ch.* v. *Wacher*, 42 Barb., 44 ; *Myers* v. *Eddy*, 47 id., 264 ; *Hoes* v. *Van Hoesen*, 1 N. Y., 120 ; *Allan*

v. *Gott*, 2 Eng., 333 ; *Ripple* v. *Ripple*, 1 Rawle, 386 ; *Witman* v. *Norton*, 6 Binn., 395 ; *Hossmelner* v. *Tucker*, 2 id., 525 ; *Hatch* v. *Bassett*, 52 N. Y., 359.) The court will not adopt such a construction as will create an intestacy if it can be avoided. (*Wadley* v. *North*, 3 Ves., 361 ; *Royle* v. *Hamilton*, 4 id., 437.) Where personalty is grossly insufficient to pay debts and legacies slight indications will raise an implied intent to charge the realty. (Perry on Trusts, § 570 ; *Shulters* v. *Johnson*, 38 Barb., 80 ; *Tracy* v. *Tracy*, 15 id., 503 ; *Rafferty* v. *Clark*, 1 Bradf., 474 ; *Dey* v. *Dey*, 19 N. J., 140.) The provision of the will as to sales sufficiently shows the intent. (*Bogert* v. *Hestell*, 4 Hill, 492 ; *Bunce* v. *Vandergrift*, 8 Paige, 37 ; *Greville* v. *Brown*, 7 H. of L., 689 ; *Rugg* v. *Jackson*, 1 N. Y., 206 ; *March* v. *Wheeler*, 2 Edw. Ch., 156 ; *Lewis* v. *Darling*, 16 How. [U. S.], 1 ; *Peters* v. *Beverly*, 10 Pet., 582 ; *McLaughlin* v. *McLaughlin*, 30 Barb., 468 ; *Witman* v. *Norton*, 6 Binn., 395.) There has been a legal conversion of real into personal estate and the proceeds are assets for the payment of debts and legacies. (*Erwin* v. *Loper*, 43 N. Y., 531 ; *Horton* v. *McCoy*, 47 id., 21 ; *White* v. *Howard*, 46 id., 144 ; *Moncrief* v. *Ross*, 50 id., 481 ; *Phelps* v. *Pond*, 23 id., 69 ; *Van Vechten* v. *Van Vechten*, 8 Paige, 105 ; *Horton* v. *Case*, 2 Barb. Ch., 506.) The directions that some of the legacies be paid " out of my estate " are sufficient to charge them upon the whole estate. (*McLaughlin* v. *McLaughlin*, 30 Barb., 468.) Where some legacies are chargeable on real estate and others not, the former will be paid exclusively from the realty. (1 Story's Eq., § 566 ; Willard's Eq., 568, 569 ; Perry on Trusts, § 573.) Debts secured by mortgages will be paid primarily from the lands mortgaged. (1 R. S., 749, § 4 ; *Mosely* v. *Marshall*, 27 Barb., 42 ; *Rosevelt* v. *Carpenter*, 28 id., 426 ; *Halsey* v. *Reed*, 9 Paige, 453 ; *Johnson* v. *Corbett*, 11 id., 270 ; *Irwin* v. *Loper*, 43 N. Y., 521.)

Folger, J. The personal estate of a testator is to furnish the fund for the payment of legacies. This is the general

rule. But the personal estate may be entirely exonerated, or the real estate may be made to aid the personal, if there be express direction to that effect in the will, or if such be the clear intent of the testator to be gathered from its provisions.

In this case there is not found in the will express direction.

In searching for the intent of the testator, it has been seen that in some of the clauses giving legacies, he has given them " in money out of *my estate;*" or, " to be paid out of *my estate,*" or, " out of *my estate.*" Much stress has been put upon the use of this phrase " *my estate,*" as indicative of the intent, that his whole estate, real and personal, should be holden for the payment of the legacies; not only those to which it is immediately attached, but those also with which the phrase has no connection. The words " *my estate* " are broad enough in signification to cover all property, whether real or personal. (*Archer* v. *Deneale*, 1 Peters, 585; *Bullard* v. *Goffe*, 20 Pick., 252; *Bridgwater* v. *Bolton*, 1 Salk., 237.) They will have that effect in a clause in a will, unless controlled by words or phrases found in connection or relation with them, or by considerations drawn from other parts of the will. In this will, treating the will and the codicil to it as one, these words are some times found in such juxtaposition with the words " real estate," as to lead to the conclusion that the testator meant by them something greater and more comprehensive than personal property, or any other term indicative of but one kind of property. Thus, the executors are authorized by the testator to sell such of the real estate as shall in their judgment be for the best interest of his estate; plainly meaning, not for the best interest of the real estate alone, either that to be sold or that to remain unsold, but for the best interest of his whole estate as well the personal as the real, so that either the bulk of the whole might be increased, or that it as a whole might be made more productive of periodical income or profit. So again, upon this power of sale is put the limitation, that such portions of the real estate as are producing a reasonable income shall not be sold, until they cease to yield an adequate income, or a

sale shall be necessary for a final distribution and settlement of his estate.   Here is the same contrast, between the "real estate" as a part of his estate, and "his estate" as the whole body of his property in all of its kinds.

Had any of the above quoted phrases been attached to each of the clauses of the will that gave a legacy, I should have little difficulty in adjudging that the testator meant that his whole residuary estate, whether real or personal, should ultimately be chargeable with the payment of all the legacies.   But such phrase does not of itself directly and explicitly, and without room for other interpretation, express that meaning; and I am unable to discover any reason why the testator should attach it, with that intent, to three only of the bequests of money and withhold it from the other fourteen.   The more especially, as one of those to which it is attached is comparatively insignificant in amount, and indicates in its terms no reason of kinship or gratitude or reward why it should be made exceptionally certain of payment in full.   It is suggested that, by the use of the phrase "out of my estate," the intent of the testator is shown to blend in one whole his entire estate, of its two kinds, real and personal, and to make the whole answerable for the payment of the legacies — all of them.   There are several cases in which the courts have gathered from the expressions of the will, and from all of its parts, this intention to blend the two estates into one, so that the two in one should both be chargeable with the payment of legacies. But the same difficulty remains, of attributing this intention in this case, from the occasional use of this phrase, when it has been omitted elsewhere, where every circumstance would seem as imperatively to call for it.   If its use once or twice or three times was with an intent to inform it with a particular meaning, why was not the non-use of it in many more other times, with an intent that no such meaning should be conveyed?   And if each of these intents existed, what substantial reason consistent with all the facts of the case, to be gathered from the instrument, can be given why the testator provided more certainly for some of these legacies than for

others? The latter reason fails entirely to come forth. It is, therefore, more reasonably to be inferred that the use of the phrase, as well as the non-use of it, was equally without distinct and explicit intention. It is evident, from the fact that at three different times in the same day the instrument was under the hand of the draftsman, and before the testator for original execution and for amendment, that there was not deliberation and care in its preparation, and that particular and isolated phrases were not studiously used, nor the use of them studiously avoided. The intention of the testator is rather to be got from the whole scope and purpose of the will, and from those particular provisions in it which exhibit a forecast and purpose on his part. Looking in this way at the will and codicil, there is that in the latter which is not susceptible of reasonable explanation, unless upon the theory that the testator meant to make his real estate aid his personal in discharging the several legacies given by him. I have already spoken of the authority given to the executors, to sell any and all portions of the real estate, in their discretion and judgment, for the best interest and advantage of the estate. Save for the purpose of procuring the fund of $7,000, the income whereof should be applied to the improvement of the testator's cemetery lot, there is no hint of any object in view of the testator, in giving this power, unless it was to create the means for paying these legacies. There is no mention in the will of debts owing by him. It cannot be said, from the will, that his debts were at all in his mind, or that he dictated a provision in it for the purpose of meeting them. Indeed, it is absurd to suppose that if he had had in his mind that there would or might be need for a sale of real estate to raise a fund for the payment of his debts, he should, without mention of his debts in his will, proceed to give so much, and so variously, and with such particularity, by legacies, and yet leave them to be paid from personal property or not at all. It is fair to say, from all the circumstances of the case, which existed on the day on which he made his will, that he had no doubt but that his

estate was ample to pay his debts, and that he had, in making it, no concern as to them. By force of law and the rights of his creditors, the debts against him could, if need be, follow and take all of his property, of any kind. This he was presumed to know. It was not for the purpose of obtaining money with which to pay his debts that the real estate was to be sold and converted.

Nor was it for the benefit of the devisees of specified portions of the real estate, that the power to sell was given. Those portions went to the devisees of them as such, as real estate, though subject to the power of the executors to sell. A power not to be exercised however, for the benefit of the residue of the estate, until it had first been exerted upon those portions of the real estate not specifically devised.

Nor was it for the benefit of his heirs at law, who would take by descent the real estate not specifically devised, subject to the power given to the executors. There is no hint in the will, nor is there in the case, of any cause existing why a sale and conversion into personalty would be for their benefit. The same persons who are his heirs at law, are also his next of kin, and would take by distribution the avails of the sale, as well as by descent the real estate as such. No express trust is created by the will in their behalf. It is not apparent that any forecast for them induced the conferring of this power upon the executors.

It does not appear from the case that the testator was under contracts to sell any of the real estate, so that there is not this reason for the power given to the executors.

There remains from a consideration of the will and codicil, and of the facts and circumstances existing when the will was made, but two purposes for which the testator could have a second time revised the instrument he had made, and again recalled the draftsman of it, to add to it this provision important in itself and in its effects upon his estate. The will, save where it gives specific lands or specific chattels, speaks only of moneys. It speaks of them in fixed amounts. And wherever spoken of, they are to go sooner

or later into hands, other than those of the executors as such. The executors are to find the money, but to pay it over to others. And but in one instance, are they by special direction, to retain or invest the sum named, and to pay over the income and interest from time to time. The sum of $7,000 is to be invested, and the income applied to the improvement of the cemetery lot. It is to be done however, under the direction of George Story and Eliza Taylor, the brother and the sister of the testator, not as executors, though they were executors, but as individuals, so that the power to sell the real estate, and thus to convert it into money, was not given in contemplation of the money received, remaining in the hands of the executors, for any other ultimate purpose than such as is disclosed by the will itself. There are but two purposes disclosed by the will. One is the creation of the fund for the improvement, by the application of the income thereof, of the cemetery lot. The other is, the payment of the various legacies given by the will.

It is plain that the testator was earnest and sincere in the gift of these legacies. They are made with a purposeful discrimination and thoughtfulness. The claims of blood are remembered and considered. Gratitude for favors done and kindness shown enters into them. So does a design to reward faithful service. They were none of them made in a trifling disposition, nor without cordiality. They were not meant to be nugatory or unavailing. When we find, then, after the testator has made his will, and after an interval for consideration, a power given by the codicil to his executors, to sell any and all parts of his real estate in their discretion, with a restriction in the first instance, to that not bringing in an adequate income, which restriction is itself to yield to the necessities of his estate for the final distribution and settlement thereof, and there appears no other cause for giving such power, nor any other considerable object for its exercise, than the possible need of money for the payment of the legacies, we find there the intent of the testator manifested, that the real estate should be converted, if need be, in aid of the

personalty, so that the legacies might not go unprovided for. There is much significance in the provision that the restriction upon the power of sale, should yield to the necessities of the estate, in view of a final distribution and settlement. I think that we must interpret the phrase "final distribution and settlement," as having reference to the peculiar form of some of the bequests. Some of the legacies are without time of payment prescribed. Some are by the terms of the gift, payable at the end of a term of years, varying from one and a half to ten years. There could be no final settlement and distribution of the estate, until the end of the longest of these terms. Not until then could the executors make up and render their last account and obtain their discharge. Debts might be, probably would be, paid long before that. So that the final settlement which the testator had in his mind, was that which should come when the executors had discharged all their duties under the will, or were in readiness so to do, by the payment of the legacies deferred for the time above stated. And if in view of that distribution and settlement, it should be requisite to sell real estate, even that which was so eligible as to produce a good and reasonable income, it was to be done.

As in the contemplation of the will and codicil, there was substantially no need of money, save for the payment of legacies, so the power to sell to meet that need must be to get money for that payment.

It is contended by the appellants, that the articles of personal property specifically bequeathed, should be sold for the payment of debts, when the other personal assets have been applied to that object and have been insufficient.

It is the rule that specific legatees can only be called upon by the executor for abatement, upon the failure of the general personal estate to discharge debts. Until then, these legacies must be fully satisfied to the prejudice of general legatees. (*Clifton* v. *Burt*, 1 P. Wms., 680.)

The principle is the presumed intention of the testator to give a preference to those legatees. This intention is pre-

sumed from his severing specific parts of his personal estate from the rest and bequeathing them specifically. If there were no way for the payment of the general legacies in this case but from the personal estate, the contention of the appellants would prevail. But as we have seen, they may be paid from the avails of a sale of real estate. Here comes in that other rule, that a claimant having two funds shall go first to that on which another creditor has no lien. (*Lanoy* v. *Duke of Athol*, 2 Atk., 446.) And so also applies the principle above stated, for the testator having provided that the real estate may be called to aid the personal in the payment of the general legacies, it was presumably his intention that the specific legatees should have their gifts without liability to abatement.

The judgment of the General Term appealed from seems to be satisfactory to the appellants, save in the particulars embraced in the two points above considered.

The judgment of the General Term should be affirmed.

All concur.

Judgment affirmed.