CHARLES H. KALBFLEISCH et al., Executors, etc., Respondents, v. FREDERICK W. KALBFLEISCH, et al., Respondents, JOSEPHINE M. L. FLEET, Appellant.

Where a testator, immediately after and in connection with, a provision in his will for certain of his children, makes a gift to his other children, speaking of them as a specified number, which is less or greater than the number in existence at the date of his will, the number will be rejected on presumption of a mistake, and all the other children will be entitled to share in the gift, unless from other portions of the will it can be inferred that all were not, and who were the particular children intended.

K., at the time of making his will, had nine children, all of whom survived him. By his will he gave to five of his children pecuniary legacies for life, with remainder to their issue, to his daughter J. he gave certain specified real and personal property. He then, by the fifth clause of his will, gave to the remaining three children certain real estate, "subject, however, to the payment of $113,000 to the other *eight* of my children," to be secured by bond, and by mortgage on the real estate devised. He devised to his son F. certain real estate, subject to the payment of $15,000 to his executors. By the ninth clause of his will he declared it to be his intention that the said $113,000 and $15,000 "shall make part of the amount specifically devised to my children, and shall not be considered as additional or in excess thereof." In an action for a construction of the will, *held* (EARL, J., dissenting), that the word "eight," in the fifth clause, should be disregarded; and that, had there been no further expression of intent, the six "other children" would each take an equal share in the $113,000 bond and mortgage; but that the express declaration of the testator's intent in the ninth clause, must govern, and this excluded his daughter J. from any share therein: First. Because the $113,000 and the $15,000 were alike affected, and were both to be a part of the "amount specifically devised," and J. confessedly had no claim to any part of the $15,000. Second. Because a share in neither could be made part of an "amount specifically devised," where no money or security was given, but simply specific real and personal property; as moneys or securities could not become part of a piece of real estate, or of a certain chattel, and if received by the donee must be in addition thereto.

The testator devised and bequeathed his residuary estate to his nine children equally. By a codicil he authorized his executors to sell his real estate not specifically devised, and directed that the pecuniary legacies should not be paid over to the life tenants, but upon their decease, respectively, to their issue, they receiving only the income; no provision was made in the will for the payment of the testator's debts

his personal property was much more than sufficient to pay them, but the residue, with the $113,000 and the $15,000 added, was insufficient to pay the pecuniary legacies. *Held,* that the intent of the testator was to charge the pecuniary legacies upon the residuary real estate, and to authorize the sale thereof, if necessary to make up the sum required for their payment.

(Argued November 10, 1876; decided November 21, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, reversing, in part, a judgment entered upon a decision of the court at Special Term.

This action was brought to obtain a construction of the last will and testament of Martin Kalbfleisch, late of the city of Brooklyn, deceased.

Said testator died in February, 1873, leaving a will dated January 18, 1873, and a codicil thereto dated February 4, 1873, both of which were duly admitted to probate.

The following is a copy of the material portions of the will:

"First. I devise to my daughter, Elizabeth W. Robinson, the house and lot on Pacific street, in the city of Brooklyn, where she now resides; and I also devise and bequeath to the said Elizabeth, the sum of $74,000, being the sum of $100,000, after deducting the sum of $12,000 for the house hereby devised to her, and the further sum of $14,000, for a note now held by me against the husband of the said Elizabeth. The said house and lot, and the said sum of $74,000 is hereby devised and bequeathed to the said Elizabeth, for life only, and upon her decease, to her issue, in the same manner as they would inherit the same if she died intestate.

"Second. I devise and bequeath to my son, Frederick W. Kalbfleisch, the bonds of the sewing machine company with which he is connected, now held by me, amounting to about the sum of $23,000. I further order and direct that my executors, hereinafter named, shall deduct the amount of my endorsements and liabilities for my said son Frederick, amounting, as I believe, to between $30,000 and $40,000, from the sum of $100,000, and also the amount of said sewing machine

bonds; and I devise and bequeath to the said Frederick, the balance of the said sum of $100,000, after such deduction, to be held and enjoyed by him during his natural life, and upon his decease, the said balance so bequeathed to him for life, shall descend to and be distributed to his issue, in the same manner as if the same had belonged to him absolutely, and he had died intestate.

"Third. I devise and bequeath to my daughter, Helen M. Thursby, the house and lot where she now resides, situate on South Fourth street, in the city of Brooklyn. I also devise and bequeath to the said Helen, the sum of $92,000, being the sum of $100,000, less the sum of $8,000 for the said house and lot, the devise and bequest being for life only; and the said house and lot and the said balance of $92,000 is to descend to and belong to her issue, at her decease, in the same manner and portions as if the same belonged to her absolutely, and she had died intestate.

"Fourth. I devise and bequeath to my son, Edward L. G. Kalbfleisch, the sum of $75,000 for life, to have the use and benefit thereof; and at his decease, the said $75,000 is to descend to his issue in the same manner as if the same had belonged to him absolutely, and he had died intestate.

"Fifth. I devise and bequeath to my three sons, Charles H., Albert M. and Franklin H. K., the sum of $283,000, or thereabouts, being the amount now owing, or to become due on a contract for the purchase of real estate and business from me, and the same to be paid by a surrender or release of any securities or obligations now held by me for the payment of such sum, and a full release thereof. I further devise and bequeath to my said three last sons, Charles H., Albert M. and Franklin H. K. Kalbfleisch, the store and premises now occupied in part by them, situate on Fulton street, in the city of New York, at the corner of Cliff street, and the store and premises on Cliff street, subject, however, to the payment of $113,000 to the other eight of my children, which last named sum is made a lien thereon, and is to be secured by a bond and mortgage executed by the said three sons, Charles H., Albert M.

and Franklin H. K., on said premises so devised, to the other eight children.

"Sixth. I hereby devise and bequeath to my son, Franklin H. K. Kalbfleisch, the house and lot where he now resides, situate on Portland avenue, city of Brooklyn, subject, however, to the payment or security of payment of the sum of $15,000 thereof to my said executors.

"Seventh. I hereby devise and bequeath to my daughter, Josephine M. L. Fleet, the house and grounds where I now reside, situate on Bushwick boulevard, near the corner of Grand street and said boulevard. I also devise and bequeath to my said daughter Josephine, the horses, carriages, furniture, bedding, and all other personal property now upon said premises, as enjoyed by me as a residence, to the same extent as now used and enjoyed by me.

"Eighth. I further devise and bequeath to my daughter, Isabella G. Weaver, the sum of $75,000 for life, to be used and enjoyed by her, and said sum of $75,000 is to descend to her issue, at the time of her decease, in the same manner and portion as if the same had belonged to her absolutely, and she had died intestate; but in the event of her dying without leaving any issue surviving her, then such sum of $75,000 is to revert to and belong to my estate, and to be distributed among my heirs.

"Ninth. It is my intention that the amount of said mortgage of $113,000, and the sum to be paid by my son Franklin for his house on Portland avenue, shall make a part of the amount specifically devised to my children, and shall not be considered as additional or in excess thereof.

"Tenth. I hereby devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my nine children, Elizabeth, Frederick, Helen, Edward, Charles, Isabella, Albert, Franklin and Josephine, to be divided equally between them to them and their heirs forever.

"Lastly. I hereby nominate and appoint my sons Charles H., Albert M. and Franklin H. K., the executors of this my last will and testament."

The codicil contained this clause :

" First. I hereby authorize and empower my executors, Charles H., Albert M. and Franklin H. K. Kalbfleisch, named in my said will, to sell and convey all or any portion of my real estate not before specifically devised by said will, and I order and direct that the several sums bequeathed by said will for life to my several children, namely, $74,000 to my daughter Elizabeth; the amount of the bequest to my son Frederick W., to be fixed by deducting the amount of the bonds and my own liabilities from the sum of $100,000, whatever that sum may be; the sum of $92,000 to my daughter Helen M. Thursby; the sum of $75,000, as devised by said will, to my son Edward L. G. Kalbfleisch, but which is herein reduced to $50,000; and the sum of $75,000, bequeathed to my daughter Isabella G. Weaver, being the sums specifically bequeathed to my said children by my said will, shall not be paid over by my said executors to the several parties to whom such bequests are made; but it is my desire, and I hereby direct that my said executors shall invest the same in some safe manner, and pay over to the respective parties only the interest thereof during their respective lifetimes, and at the decease of each of said parties, to pay over to their respective issue the remainder of such bequests in accordance with the terms of said will."

The testator left him surviving the nine children named in the will.

The court found, in substance, that at the time of his death the testator was seized of the real estate specifically devised, and also of other real estate of the value of $60,000; that the proceeds of his personal estate not specifically bequeathed, after the payment of debts and expenses, were insufficient to satisfy and discharge the pecuniary legacies, the deficiency being $155,000, not taking into account certain uncollected claims belonging to the estate and certain disputed claims against it, unless the two charges of $113,000 and $15,000 were applied in payment thereof; and if so applied there was a deficiency of $27,000. The court found, as conclusions of

law, that the legacies were, none of them, a charge upon the residuary real estate; that the charge of $113,000 and the mortgage therefor upon the real estate, devised by the fifth clause of the will, was intended to be given to the six children of the testator other than the beneficiaries named in said clause, and that the same was a specific legacy to them absolutely and jointly without abatement and could not be applied to the payment of the pecuniary legacies, and that Josephine M. L. Fleet was entitled to one-sixth thereof; that the $15,000 was intended to go to the executors to be applied in payment of the pecuniary legacies, and that in case of a deficiency of personalty applicable to the payment of said legacies, they should abate *pro rata*. Judgment was entered accordingly. The executors, plaintiffs, and the defendants other than Mrs. Fleet, appealed from all of the judgment save that portion in reference to the $15,000. The General Term reversed the portions of the judgment appealed from and adjudged that the $113,000 was intended by the testator to become a portion of his personalty to be applied in satisfaction of the pecuniary legacies given by the first, second, third, fourth and eighth clauses of the will, and that Josephine M. L. Fleet had no right or interest therein; also that the residuary real estate, in case of a deficiency of the personalty, including the $113,000 and $15,000, to satisfy the pecuniary legacy, should be sold, or so much thereof, as might be necessary to make up, the deficiency.

*Philip S. Crooke* for the appellant. The pecuniary legacies were not chargeable upon the residuary real estate. (*Holt* v. *Vernon*, Prec. in Ch., 430; id., 397; 3 Ves., 545; *Reynolds* v. *Reynolds*, 16 N. Y., 257–259; *Tracy* v. *Tracy*, 15 Barb., Ch., 503; *Lupton* v. *Lupton*, 2 J. Ch., 623; 3 Atk., 626, note; *Brudenell* v. *Boughton*, 2 id., 268; *Keeling* v. *Brown*, 5 Ves., 359; *Harris* v. *Fly*, 7 Paige Ch., 421; *Taylor* v. *Dodd*, 58 N. Y., 335; *Greville* v. *Brown*, 7 H. of L. Cas., 700, 701; *Corwine* v. *Corwine*, 24 N. J. Eq., 580.)

*Edgar M. Cullen* for the respondents. The pecuniary legacies are chargeable on the residuary realty. (*Taylor* v. *Dodd*, 58 N. Y., 343; *R. C. Ch.* v. *Wachter*, 42 Barb., 43; *Schuters* v. *Johnson*, 38 id., 80; *Tracy* v. *Tracy*, 15 id., 505; *Reynolds* v. *Reynolds*, 16 N. Y., 261; *Greville* v. *Brown*, 7 H. of L. Cas., 700; Hawkins on Construction of Wills, 294, 295; *Corwine* v. *Corwine*, 24 N. J. Eq., 580; *Van Winkle* v. *Van Houten*, 3 id., 172.) The whole charge of $113,000 should go to the satisfaction of the five pecuniary legacies to be held in trust as provided by the codicil. (2 Jar. on Wills, 525; 1 id., 404.)

FOLGER, J. If the will, at the end of the fifth clause of it, had ceased to speak of the mortgage of $113,000, it might, with some reason, be urged that the appellant, Mrs. Fleet, took a share thereof. It is plain that the numeral "*eight*," applied to the other children of the testator in that clause, is used mistakenly. It has no apparent meaning applicable to the facts of the case. As it cannot be applied, it must be entirely left out in the reading. Then the phrase, "*other children*," becomes controlling, and indicates all of the children of the testator, other than the three who are distinctly designated, as those to become the mortgagors to the others. For there is nothing in the fifth clause, nor in any preceding part of the will, to indicate with sufficient certainty what numeral ought to take the place of the word "eight." It is a rule in the construction of wills, that where a gift to children speaks of them as a specified number, which is less than the number in existence at the date of the will, the specified number will be rejected, on the presumption of a mistake; and all the children so in existence be held entitled, unless it can be inferred who were the particular children intended. (*Garvey* v. *Hibbert*, 19 Ves, 124; *Spencer* v. *Ward*, Law Rep,. 9 Eq., 507.)

The principle upon which the earlier cases went, was to avoid intestacy by reason of uncertainty. If there is a gift to a number of children, when, in fact, there are more than that number, either the general intent to benefit all the class must

be acted on, and the statement of the number be treated as a mistake, or the gift must be held void for uncertainty; as it is not possible to say which out of the whole number are meant (*Wrightson* v. *Calvert, infra*); though sometimes this argument is thought not to be sound, and the authority of the precedents is yielded to rather than the strength of the reasoning. (Law Rep., 9 Eq., 509, *supra; Stebbing* v. *Walkey*, 2 Bro. C. C., 86.) It is otherwise, if the particular ones be pointed out by some additional description (*Wrightson* v. *Calvert*, 1 Johns. and Hem., 250); or where some of a class have already been provided for, and the specified number corresponds with the number of those unprovided for, and there is a division into the same number of shares. (*Shepard* v. *Wight*, 5 Jones Eq. [N. C.], 22.)

A like principle would have to be applied to this case, in which the number spoken of is greater than all " the other children" in existence. There is here an intent to benefit a class, which intent must be respected. But the exact number of that class is uncertain. Hence, there is the same necessity of a choice between defeating that intent, or holding that the use of the inapplicable number was a mistake. The law takes the latter horn of the dilemma, and gives the bequest to all of that class, be it larger or smaller in numbers.

Thus it is, that if the will stopped speaking of the mortgage at the fifth clause of the testament, it would be construed as a gift of the mortgage to the other children of the testator; that is, to all of his children other than the three who are directed to make the mortgage. Then Mrs. Fleet would take a share.

But we are not confined to the fifth clause, nor permitted to stop there. In the ninth clause the testator has made an emphatic utterance of his will as to the way in which the mortgage should go. The declaration in that clause must govern, because it is the later expression of his will, and because it is expressly stated as embodying his intention as to the mortgage. When we reach the meaning of that clause, it becomes apparent that Mrs. Fleet takes no share of the

mortgage. In the first place, both the mortgage and the $15,000 to be paid by the son Frederick are alike affected, and both are to be "a part of the amount specifically devised to his children." But Mrs. Fleet confessedly has no claim to any part of the $15,000. And to hold that she has to the mortgage, we must interpolate words, so as to make the clause say, that the mortgage is to apply on the amount given to some of the six children, and the $15,000 on that given to fewer of those children. This would be unwarrantably to split up, and add words to, a general restrictive clause which, taken as it reads, is intelligible and distinctly expresses the intention, that the mortgage and the sum of money shall be a part of gifts to the same beneficiaries. Again, the testator directs that the mortgage and sum shall be a part of the "*amount* specifically devised." Now no amount, in an ordinary use of the word, that is, no sum of money, no security for a sum, no evidence of debt for a sum, is specifically given to Mrs. Fleet. She has a devise of specific real estate and a bequest of specific chattels. A share in a mortgage or a sum of money cannot become a part of a piece of real estate or of certain chattels. These are what are given to Mrs. Fleet, and, from their nature, she must and will take them as a whole or not at all. They are incapable of increase or excess, in kind, by adding to them a pecuniary legacy or a gift of a security. Whatever else the donee of them receives from the donor, must be something besides, and in addition to, them, leaving them the same in bulk and value. How, then, can she receive a part of the mortgage without taking in addition to, or in excess of, the specific devise and bequest to her, and in plain breach of the direction of the testator, that the gift of the mortgage shall not be considered a gift in addition to, or in excess of, the amount particularly given. To observe this direction of the will, if Mrs. Fleet receives a part of the mortgage, the executors must, in some way, diminish her interest in the real estate or the chattels specifically given to her. But that is impracticable, and obviously not within the intention of the testator. That the word "*devised*" is used, in speaking of the gift to his children,

does not point to Mrs. Fleet, though she is technically a devisee. That word is used indiscriminately throughout the will with the word "*bequeath*," and is of no technical significance in this clause. A suggestion was made that the meaning of the ninth clause is: that so much of the mortgage as would belong to those of the six children who are the donees of pecuniary legacies, being five of them, and the whole of the $15,000 from Franklin, are to be a part of those legacies, and that the other sixth of the mortgage is to go to Mrs. Fleet, without becoming a part of any prior devise or bequest. There is no such division of the amount of the mortgage made by the language of the clause. It is the amount of the mortgage, that is, the whole amount of it, which is to be a part of the amount of the bequests, that is, the whole amount of them.

We, therefore, conclude that Mrs. Fleet does not take, under the will, any immediate interest in the mortgage.

We are further of the opinion, that the testator meant to charge the payment of the pecuniary legacies given by his will upon his real estate not therein specifically devised.

In *Taylor* v. *Dodd* (58 N. Y., 335), we said, that though, as a general rule, the personal estate is to furnish the fund for the payment of legacies, yet it may be entirely exonerated, or the real estate may be made to aid the personal, if there be express direction to that effect in the will, or if such be the intent of the testator to be gathered from its provisions. It is not necessary to state any different or further general rule in this case. Nor is it necessary that we go into a consideration of the effect upon this question of the residuary clause in this will.

Here, as in *Taylor* v. *Dodd*, there is no express direction to charge the legacies. Our conclusion is put upon the intention of the testator as manifested in the will, considered in view of the circumstances in which it was made. The testator has given to his executors a power of sale of those parts of his real estate not specifically devised. Now, there was no real estate for this power to operate upon save the residuary. That, by the will, was given to all his children. So that a

necessary effect of giving a power of sale by the codicil, is more or less to disturb that gift of the will. It must have been in the mind of the testator then, when he made the codicil, that such would be a necessary effect. Such must have been his purpose. To what end? Not to the end of paying debts, for no mention of debts is made in the will. The personal estate was ample therefor. Debts of themselves, by the rights of creditors, will seek the real estate when the personal is exhausted. Not for the convenience of the devisees of the residuum, as such devisees, to convert it into personalty for their safety, ease or benefit. They were all adults, all capable of conveying. They took by equal shares. Either of them could, at any time, enforce a partition and sell or hold his share, as seemed best. And this meets and answers the plausible suggestion of the learned counsel for the appellant, that the testator foresaw the ruinous effects upon his unoccupied real estate of municipal taxes and assessments, and framed a door of escape that his executors might, at any time, throw open. The devisees, as the will stood, needed not this outlet nor the aid of the executors.

The power to sell is found in the codicil, and in the same clause of it with a testamentary provision, also first found in the codicil, for an investment of the principal sums of all the pecuniary legacies given by the will, for a payment of the income to the life-tenants of the legacies, and on their decease, respectively, of the remainder to their respective issue. By the will, the executors would have paid the legacies into the hands of the legatees for life. The codicil indicates an after-thought in the testator to secure the principal sum for the remaindermen, and, as cognate with that after-thought, a purpose to make sure the means of obtaining the whole of the principal sum by a sale of the residuary estate if there should be a deficiency. For there is no other object for which there was likely to be a need of a sale. And it is a familiar principle that real estate, sold in pursuance of a power of sale in a will, is deemed to be converted into personal property by the direction of the testator. (*Horton* v. *McCoy*, 47 N. Y., 21.)

If this consideration be weak or be strong, it is aided by another. It is plain that the testator meant to dispose of his whole estate, and so that each of his children should share in it, and with an approximation to equality, all things considered. He looked upon them all as having claims upon his testamentary consideration. His gifts to them were from a sense of paternal duty and obligation. They were not gratuities flowing entirely from good-will. It is to be deemed of them, then, that he was solicitous that each one of his donees should be as reasonably sure of getting his or her share of the estate as any other. In such case, an intent to charge legacies upon land is more readily attributed to a testator. The intent is plain to provide for each member of the family, and to an extent for each approaching equality with the rest. This intent would fail, in this case, if the legacies were not charged upon the real estate. The law, then, infers, from provisions in the will well fitted to avoid such a result, an intent so to do. (*Van Winkle* v. *Van Houten*, 2 Green. [N. J.], 172, and cases there cited.) When, then, we find in this codicil this power of sale, with no other purpose hinted at, and with no other object appearing for the exercise of it, than to make sure of a fund for these pecuniary legacies, we are led, as we were by like considerations in *Taylor* v. *Dodd*, to conclude that the testator meant that the residuary real estate should, or might be, converted in aid of the personalty. We said in that case, which is applicable here : As, in the contemplation of the will and codicil, there was substantially no need of money, save for the payment of the legacies, so the power to sell to meet that need, must be to get money for that payment.

The judgment of the General Term should be affirmed.

All concur, except EARL, J., who was for reversal on first ground, and ANDREWS, J., who did not vote.

Judgment affirmed.