LOUIS J. LEDIGER, Respondent, *v.* CALANTHA B. CANFIELD and Others, Appellants, Impleaded with Others.

*Will — direction by the testatrix that the debts of her mother " be paid out of my estate " — when it does not charge her real estate with such debts.*

A will provided, " *First.* I order and direct that all my just debts be paid as soon after my decease as can be conveniently done. *Second.* After all my just debts shall have been paid I order and direct that all debts of my mother which shall remain unpaid at my death shall be paid out of my estate."

The testatrix then gave a specific legacy to a stepdaughter, a pecuniary legacy of $1,000 to a servant employed by her mother and herself, and all the rest, residue and remainder of her estate, both real and personal, to her step-daughter and to certain blood relatives. The executors received about $4,000 in personalty, which sum was insufficient to pay the testatrix's debts and the expenses of administration. At the time the will was executed the testatrix

was entitled to receive from her deceased father's personal estate $7,500 in personalty, and, while the net amount received by her executors on account of such interest was less than $4,000, it did not appear that at the time of making the will the testatrix had any reason to know or to believe that her share in her father's personalty would be so materially reduced.

*Held,* from a consideration of the condition of the testatrix's estate at the time she executed the will and from the fact that she did not charge the payment of her own debts or of any of the legacies contained in the will upon her realty, and that she did not give a power of sale to her executors, that it was not her intention to charge the payment of her mother's debts upon such realty;

That the use of the words "my estate" in the 2d clause of the will did not suffice in themselves to establish an intent on the part of the testatrix to charge the debts mentioned in that clause upon her real estate.

APPEAL by the defendants, Calantha B. Canfield and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rockland on the 23d day of June, 1902, upon the decision of the court rendered after a trial at the Rockland Special Term in an action brought to obtain a judicial construction of the will of Julia F. Mansfield, deceased.

*Ralph Wood Kenyon,* for the appellants Merritt M. Hunt and others.

*Thaddeus D. Kenneson,* guardian ad litem of the appellant L. Leroy Hunt.

*Daniel D. Sherman,* for Isaac B. Canfield, guardian ad litem of the appellants Calantha B. Canfield and others.

*George A. Wyre,* for the respondent.

JENKS, J.:

This appeal challenges the decision of the Special Term that the debts of the mother of the testator were charged upon the real estate of the testator. The will provided: "*First.* I order and direct that all my just debts be paid as soon after my decease as can be conveniently done. *Second.* After all my just debts shall have been paid I order and direct that all debts of my mother which shall remain unpaid at my death shall be paid out of my estate."

The testator then gave a specific legacy to a stepdaughter, a pecuniary legacy of $1,000 to John Gulifield, a servant employed by her mother and herself, and all the rest, residue and remainder of her estate, real and personal, to her stepdaughter and to certain blood relatives.

The provision for the payment of the debts of the testator is to discharge obligations charged by law. That for the payment of her mother's debts is a bounty given to those creditors by the testator. Therefore, the two kinds of debts are not to be classified together simply because this estate is to discharge them, but I think that the provision for the payment of the mother's debts should rather be considered as analogous to a provision for a legacy. The executors took a qualified legal title to the personalty and are regarded as trustees for the benefit of the creditors and the distributees (*Blood* v. *Kane*, 130 N. Y. 514, 517 ; Redf. Surr. [5th ed.] 518), and these creditors may be regarded as beneficiáries entitled to distribution pursuant to the terms of the testament. As a legacy cannot be charged in part or in whole upon the realty unless the intention of the testator be manifest, the precise question is whether there was such intention. This must be shown " by the will itself, or in certain cases may be made to appear by proof of extrinsic facts, such as the condition of the testator's estate at the time he made the will." Express direction is not essential ; it is enough that the intent can be gleaned from all of the provisions of the will. (CULLEN, J., in *Dunham* v. *Deraismes*, 165 N. Y. 65 ; *Morris* v. *Sickly*, 133 id. 456 ; *Brill* v. *Wright*, 112 id. 129.) In the absence of express direction, the intent must be " either expressly declared or fairly and satisfactorily inferred " (KENT, C., in *Lupton* v. *Lupton*, 2 Johns. Ch. 614) ; it must be " clear " (FOLGER, J., in *Taylor* v. *Dodd*, 58 N. Y. 335, and *Bevan* v. *Cooper*, 72 id. 317, 322) ; it must be " clearly inferred " (BRADLEY, J., in *Matter of Powers*, 124 id. 361, 368) ; it must be " clear " and " manifest " (HOSMER, Ch. J., in *Swift* v. *Edson*, 5 Conn. 531) ; it " must be clear upon the words " (STORY, J., in *Wright* v. *Denn*, 10 Wheat. 204, 229).

The learned Special Term said that there were no extrinsic facts to help interpretation, and I think that this view was substantially right. The will was executed in March, 1897, and the testator died in October of that year. One of the executors was asked by the

learned counsel for the plaintiff: " Q. What was the personal estate of the testatrix, Julia F. Mansfield — what was the value of it? A. As per the inventory or the final amount of the property in our hands? Q. The amount of the property." To this question, thus limited, answer was made that it consisted of household property and the proceeds of the sale of securities received from a referee in partition, and it was further stated that the personal property which came into the executors' hands was insufficient to pay the testator's debts and expenses of administration. The amount of such debts and the funeral expenses was $3,000. The executors received about $4,000 in personalty. But the testator was a beneficiary under the will of her father. The testator made her will at the end of March. The estate of her father was in partition, and on May first of that year the personalty of her father's estate, aside from the realty, which was under partition, was nearly $15,000, of which one-half belonged to the said testator. It is true that the payment on account of that interest was less than $4,000, due to the deductions of costs, allowances, expenses and fees. But this was made to and received by the executors of the testator, and there is no evidence to show that at the time of making the will the testator had any reason to know or to believe that her share in this personalty would be so substantially reduced. The " intention and purpose (to charge the realty) must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events," says EARL, Ch. J., in *Morris* v. *Sickly* (*supra*). (See, too, *Dunham* v. *Deraismes, supra*.) If any infer_ ence could be drawn as to the condition of the testator's estate, when she executed the will, from the amount received by the executors months afterward, that inference is practically destroyed by the fact that the testator was entitled to half of her father's personalty, which, within a month after the will was made, amounted to nearly $15,000 in the hands of the trustee. I think that the intent, if found, must be within the four corners of the will.

The learned counsel for the respondent contends that the use of the words " my estate " suffice in themselves to establish the intent to charge these debts upon the realty of the testator, citing *Taylor* v. *Dodd* (*supra*). There is an argument based upon the character of the provision which makes against the contention. When a

.testator provides for the payment of his debts, it is a natural and conventional, even if superfluous provision. When he provides for the payment of a legacy it is, of course, a disposition made of his own estate to one selected by him. Of course such a creditor or legatee is to be paid out of the estate. It goes without the saying. But the provision in question contemplates neither creditor nor ordinary legatee. The testator departs from usual disposition and provides for those who have neither legal nor natural claim upon her. But, presumably, out of affection for her mother, she makes provision out of her estate for those who naturally must look to the estate of her mother. The intent was that _her_ estate should discharge the obligations of _another's_ estate, and she may well have used the words " my estate " to make clear this intent. The provision " I order and direct that all debts of my mother * * * shall be paid " might be subject to hyper-criticism or to criticism, as ambiguous or not, to be resolved without cavil. The additional words " out of my estate " are apt to resolve all doubt, and so the words may well have been used to make a direction explicit and not to extend the direction to a fund, even though they were sufficiently generic to accomplish the latter as well as the former purpose.

In _Taylor_ v. _Dodd_ (_supra_) the court did not base its decision solely upon the effect of the words " my estate." It did say that the words " are broad enough in signification to cover all property, whether real or personal," citing authorities, and that these words " will have that effect in a clause in a will, unless controlled by words or phrases found in connection or relation with them, or by considerations drawn from other parts of the will." But the court also said : " But such phrase does not of itself directly and explicitly, and without room for other interpretation, express that meaning ; and I am unable to discover any reason why the testator should attach it with that intent to three only of the bequests of money and withhold it from the other fourteen." A reading of the full opinion shows that the decision was not put solely upon the force of the words " my estate," but upon the use of them (being words sufficiently broad) in juxtaposition with other words and read together with other provisions. Thus the learned court say that the words in the will then considered are sometimes found in juxtaposition with the words " real estate," so as to lead to the conclusion that

the testator meant something greater and more comprehensive than personal property or any other term indicative of but one kind of property, and further laid much stress on the circumstance that there appeared no other cause for giving a power of sale to the executor but to create a fund for the payment of the legacies. Although *Taylor* v. *Dodd* (*supra*) declares that the phrase is not conclusive, yet it may be noted that two of the three authorities cited therein for the comprehensive force of the words "my estate" serve to illustrate that the use of the words is not enough to establish the intent regardless of the qualifying force of other expressions of the will. Thus, in *Archer* v. *Deneale* (1 Pet. 585, 589), MARSHALL, Ch. J., says: "That the word 'estate' is sufficiently comprehensive to embrace property of every description, and will charge lands with debts if used with other words which indicate an intention to charge them is a proposition which cannot be controverted. As little is it to be denied that the word alone, if not used with an intent to subject the lands of the testator to the payment of his debts, cannot have that effect." In *Bullard* v. *Goffe* (20 Pick. 252), although the court said that a devise of "all the rest and residue of my estate" was sufficient to pass real estate, yet it held that the words could be controlled so as to mean either real or personal estate exclusively, while in *Bridgwater* v. *Bolton* (1 Salk. 237) it was but held that the words "All my real and personal estate" passed rents, as the words were *genus generalissimum.*

In *Nixon* v. *Cameron* (26 Ch. Div. 19), where the implication was sought to be raised from a direction that the first pecuniary legacy be paid out of "my estate," SELBORNE, L. C., said: "It was insisted that the words 'my estate' thus used, comprehended real estate; as they no doubt might if a testator gave 'all his estate' to his executors, or to any other devisees. But when an implication adverse to the heir-at-law is sought to be raised from a mere direction for payment of legacies, it is necessary to consider whether the words are not sensible without any such implication. The whole personal estate vests by law in the executors; the real estate does not. The personal estate, not specifically bequeathed, is generally the proper fund for the payment of pecuniary legacies. When a testator directs his executors to realize for the payment of

such legacies, ' such part of his estate as they think right and in their judgment,' it is reasonable to understand him to refer to the estate which vests in them as executors, and not to that which does not; and the direction in the earlier sentence of the same will that a particular legacy is to be paid ' out of his estate,' naturally means that it is to be paid in a due course of administration."

In *Swift* v. *Edson* (*supra*), when the testator had bequeathed pecuniary legacies to be paid out of her estate, the court said: " Charges on land in favour of a legacy are usually made by the expression ' to be paid *out of my lands*,' or in other forms of phraseology manifesting a clear intention; but the expression in a last will, made by a testatrix, who had sufficient personalty to pay all her pecuniary legacies, that they should be paid, by her executor, *out of her estate*, is nothing more than what the law implies. * * * Now, although the word *estate* is very comprehensive, where the subject-matter demands it, and includes real as well as personal property, yet where the *executor* is directed to make payment out of a fund, it must be intended out of *that* fund over which he has control." As the testator employed words generic enough to include the realty, but not of such inherent force as conclusively to manifest the intent, we must consider the entire will.

The testator did not charge the payment of her own debts upon her realty. Though this may not have been ultimately necessary, yet the omission is more or less significant. Again, no power of sale whatever is conferred upon the executors. Such omission also is strong against the contention of the creditors in this case. (*Brill* v. *Wright*, 112 N. Y. 129.) Even if she had charged her debts upon the realty, the power of sale would not have been implied. (*Matter of Fox*, 52 N. Y. 530.) Would the testator have intended that the real estate should be charged with the payment of her mother's creditors, and yet omit the natural and further provision for the conversion of the realty? The testator gave a pecuniary legacy to an old servant, without any expression of intent that it should be charged upon the realty. Did she intend to provide for the full payment of the creditors of her mother to the exclusion of this legacy? Did she intend to prefer such creditors in full to the exclusion of her stepdaughter and her blood relatives? As pointed

out by the learned guardian *ad litem*, the learning of *Taylor* v. *Dodd* (*supra*) answers these questions.

GOODRICH, P. J., BARTLETT, WOODWARD and HIRSCHBERG, JJ., concurred.

Interlocutory judgment reversed and new trial granted, costs to abide the final award of costs.