NICHOLAS C. FRIES, Appellant, *v.* LEWIS F. OSBORN et al., Respondents, Impleaded with Others.

WILL — WHEN EXTRINSIC EVIDENCE CANNOT BE USED TO ESTABLISH INTENTION OF TESTATOR.  The rule that extrinsic evidence may be resorted to within certain limits and qualifications for the purpose of ascertaining the intention of the testator is limited to the interpretation of something which is actually written in the will; there must be some provision therein which will serve as a subject for interpretation; such evidence cannot be utilized under the guise of interpretation, for the purpose of adding to the will, provisions which otherwise are not found there at all.   When, therefore, a will contains no provision which disposes of or in any way deals with the real estate, an intention to charge it with the payment of certain legacies, provided for by a mere naked provision of the will, cannot be imputed to the testator by parol extrinsic testimony tending to establish such intention.

*Fries* v. *Osborn,* 117 App. Div. 917, reversed.

(Argued October 4, 1907; decided November 19, 1907.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 7, 1907, which affirmed an interlocutory judgment entered upon the report of a referee in an action of partition.

The following question was certified: " Are the legacies bequeathed by the will of Michael J. Fries, deceased, a lien and charge upon his real estate, the lands described in the complaint herein ? "

The facts, so far as material, are stated in the opinion.

*Edwin A. Nash* and *Newton B. Gorham* for appellant. Michael J. Fries having died intestate as to his real estate, the lands described in the complaint descended to his heirs at law. (*Lupton* v. *Lupton*, 2 Johns. Ch. 623 ; *McCorn* v. *McCorn*, 100 N. Y. 513 ; *Reynolds* v. *Reynolds*, 16 N. Y. 259 ; *Sponge* v. *Sponge*, 3 Bligh [N. S.], 84.)

*Clyde E. Shults* and *Charles W. Stevens* for respondents. Upon the facts as found by the referee and unanimously affirmed by the Appellate Division the question of law must be answered in the affirmative. (*Reynolds* v. *Reynolds*, 16 N. Y. 262 ; *McManus* v. *McManus*, 179 N. Y. 342 ; *Taylor* v. *Dodd*, 58 N. Y. 348.) Where the personalty at the time of death is inadequate, resort is always had to the extrinsic circumstances at the date of the will to ascertain testator's intention. (*Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 363 ; *Bevan* v: *Cooper*, 72 N. Y. 32 ; *Le Fevre* v. *Toole*, 84 N. Y. 102 ; *Hoyt* v. *Hoyt*, 85 N. Y. 147 ; *Scott* v. *Stebbins*, 91 N. Y. 614 ; *McCorn* v. *McCorn*, 100 N. Y. 511 ; *Brill* v. *Wright*, 112 N. Y. 135 ; *Briggs* v. *Carroll*, 117 N. Y. 291 ; *Morris* v. *Sickly*, 133 N. Y. 456 ; *Hogan* v. *Kavanaugh*, 138 N. Y. 417.) Where effect can be given the provisions of a will, intestacy should be avoided. (*Johnson* v. *Brasington*, 156 N. Y. 187 ; *Clark* v: *Cammann*, 160 N. Y. 315.)

HISCOCK, J.   This is an action of partition.  The appellant and various defendants are the relatives and heirs at law of

one Michael J. Fries, who died leaving no descendants. The respondents are relatives of his deceased wife and legatees under his will. The dispute between them is summarized in the question submitted to us, whether certain legacies to the latter are a charge upon real estate of the testator which descended to the former.

In the answer which we are about to give to this question we feel constrained to differ with the decisions of the learned courts below, which have held that such legacies were such a charge.

The will which presents the question, outside of clauses respectively directing the payment of debts and funeral expenses and appointing an executor, contains simply and solely the following provision :

" *Second.* I give and bequeath to my brother-in-law, Lewis F. Osborn, the sum of Five Hundred Dollars ($500.00), and to my sisters-in-law, namely, Ella Harding, Mary Kilbury, Jennie Southgate, the sum of Three Hundred Dollars ($300.00) each, and my sister-in-law, Dora F. Osborn, the sum of Five Hundred Dollars ($500.00) and my niece Gladis Kilbury and my nephew Lewis S. Osborn, the sum of Five Hundred Dollars ($500.00) each."

From evidence, much of which was received over sufficient objections and exceptions, the court has found, amongst other things, that the testator left sufficient personal property to pay only a small portion of the legacies after satisfaction of debts ; that at the time of making the will he knew the value of his personal property and the amount of his debts ; that the father of the decedent's wife had advanced a thousand dollars on the purchase price of a farm deeded to testator and owned by him at the time of his death ; that the latter had intended that his wife's relatives should be repaid by will or otherwise the sum so advanced with interest for many years ; that the will was drawn by a person ignorant of the law relating to wills, and finally " that the said testator * * * intended to and did charge the real estate with the payment of the legacies mentioned in his will."

Obviously the will under consideration does not expressly

charge the legacies upon the testator's real estate. But the rule is invoked that extrinsic evidence may be resorted to for the purpose of showing an intention to so charge such legacies which will be binding in the construction of the will although express provision to that effect is wanting. It will, therefore, be well to place before us the rule upon this subject as it has been stated at various times and as unquestionably it now runs.

In *Lupton* v. *Lupton* (2 Johns. Ch. 614, 623) it is said : "The real estate is not, as of course, charged with the payment of legacies. It is never charged unless the testator intended it should be, and that intention must be either expressly declared, or fairly and satisfactorily inferred, from the language and disposition of the will."

In *Bevan* v. *Cooper* (72 N. Y. 317, 322) it is said : "There are some rules which are well settled as to the payment or charging of general legacies. One is that the primary fund for the payment of them is the personal estate. It is one to be observed, unless express direction otherwise is found in the will, or there be a clear intent to the contrary to be gathered from the provisions of the will, which may be assisted by the extraneous circumstances of the case."

It is further written in this case : "It is said that the mere fact of giving legacies by the testator furnishes a strong probability that he intended that they should be paid if his estate, in any of its parts, was sufficient therefor.

"It is hardly to be supposed that a man of sense, engaged in the solemn and deliberate matter of making a final disposition of his worldly estate, would trifle with the subject, by making bequests which he did not expect or intend should be satisfied ; and if so, then, at first view, it seems plausible to say, that he must have meant that they should be satisfied from any portion of his estate, from the real if the personal does not suffice. But yet, this idea only imputes to the testator a general purpose that legacies given shall be paid. It does not satisfactorily show that, when giving them, it entered into his mind and formed a part of his intent that they should be so charged

upon his real estate, as that it should be subject to them as to a lien."

In *McCorn* v. *McCorn* (100 N. Y. 511, 513) it is said : " Whether a legacy is charged upon the real estate of the decedent is always a question of the testator's intention. The language of the will is the basis of the inquiry, but extrinsic circumstances which aid in the interpretation of that language, and help to disclose the actual intention, may also be considered."

These decisions simply make application to a specific subject of the general rule that extrinsic evidence may be resorted to within certain limits and qualifications for the purpose of ascertaining the intention of the testator, and thereby of making clearer and interpreting clauses in his will which otherwise are obscure and of uncertain meaning. But this general rule, wherever laid down, and the rule applicable to the solution of the particular question before us as stated in the citations which we have made, seem to make it sufficiently clear that extrinsic evidence may be utilized only for the purpose of interpreting something which is actually written in the will; that there must be some provision in the will which will serve as a subject for interpretation, and that under the guise of interpretation extrinsic evidence cannot be utilized for the purpose of adding to the will provisions which otherwise are not found there at all. Many cases have been cited by the learned counsel for the respondent, and many more might have been added in which extrinsic evidence has been allowed to aid the court in interpreting provisions of wills which gave legacies and disposed of real estate, and whereby the conclusion was aided that the devise of the real estate was made subject to the payment of the legacies. But no case has been cited, or, as we believe, can be found, in which it has been decided that evidence extrinsic to the will may be made the basis of construing into the will provisions charging real estate with the payment of legacies where the will as actually written by the testator contained not one word even indirectly relating to this subject, and was abso-

lutely silent upon the subject of the testator's real estate, not taking notice or disposing of it in any way whatever. It seems almost axiomatic that a will cannot create a charge or lien upon real estate when it contains no provision whatever which disposes of or deals with such real estate. The idea of charging real estate with the payment of money by will necessarily seems to imply that the instrument shall take jurisdiction of the former and contain some provision with reference to it and that it shall not be absolutely silent and barren of any word relating to it. Until some method is adopted of reforming wills after the death of the testator, we fail to see how parol extrinsic testimony can be made to control the testamentary disposition of property as to which the testator has died absolutely intestate.

As we read it, that is this case. The testator has died intestate as to his real estate. His will does not touch it at all. There are no clauses relating to it which may be made the basis of interpretation and construction. We do not see how we are any more entitled upon the record presented to say that the will requires that the legacies be charged upon the unmentioned real estate than we would be entitled to read into the will a provision giving it in whole or part to the legatees named.

Perhaps it may be assumed from the evidence and findings that this conclusion defeats what was really the expectation and intention of the testator. If that is so, of course it is to be regretted. But it will be only another illustration of the experience that no statute or rule, however wise and conducive to public welfare and safety in its general observance and application, can be so framed that it may not be made by ignorance and carelessness an occasional source of hardship in the individual case.

The question certified to us must be answered in the negative, and the judgment appealed from reversed and a new trial granted, with costs to abide event.

Cullen, Ch. J., O'Brien, Edward T. Bartlett, Haight, Vann and Chase, JJ., concur.

Judgment reversed, etc.