In the Matter of the Petition of WILLIAM McGOWAN, Appellant, to Obtain an Order Construing the Last Will and Testament of WILLIAM McGOWAN, Deceased.

MARY ROGERS and Another, Individually and as Executors of WILLIAM McGOWAN, Deceased, and Others, Respondents.*

Decree of the Surrogate's Court of Kings county affirmed, with costs, payable out of the estate, to all parties appearing and filing briefs. No opinion. Lazansky, P. J., Rich, Young and Scudder, JJ., concur; Hagarty, J., dissents and reads for modification.

HAGARTY, J. (dissenting). William McGowan, the above-named decedent, died on the 24th day of June, 1928, leaving a last will and testament executed by him on the 31st day of October, 1927, which was admitted to probate by the Surrogate's Court of Kings county on the 16th day of July, 1928. Letters testamentary were thereupon granted to Lizzie McGowan, a sister of the decedent, and Mary Rogers, a daughter, the executrices and trustees named in the will. Decedent left him surviving the petitioner, William McGowan, who was twenty-one years old at the time of the trial in March of 1929; James McGowan, an infant son who is *non compos mentis*, whose mind will never develop beyond that of an eight-year-old child, and Mary Rogers, a daughter of the decedent, besides Lizzie McGowan, a sister and a legatee. Mary Rogers has five infant children. In this proceeding, brought pursuant to section 145 of the Surrogate's Court Act, the son, William McGowan, seeks such a construction of the will as will result in a determination that the legacies are not a charge upon the real estate of the decedent and that as to the real estate decedent died intestate. Decedent's estate at the time of his death amounted to $94,000, of which $19,000 was personal property and $75,000 was real estate. Testator, in his will, having first directed the payment of debts and funeral bills, gave to his sister the sum of $8,000, using the words " I give and bequeath." Following this, he gave to his executors and trustees the sum of $1,000 to be used for religious purposes, using the same form of expression. By the 4th paragraph he gave to his trustees the sum of $35,000 in trust, to pay the income and so much of the principal as may be necessary, in the discretion of the trustees, to the maintenance of his son James during his life, and upon his death to pay the principal, or so much thereof as may be left, " to the legal representatives, heirs at law, or next of kin of my said son, James McGowan, absolutely and forever." In the creation of this trust the words " give, devise and bequeath " were used. By the 5th paragraph of the will the sum of $25,000 was given to his trustees in trust for the benefit of his daughter, Mary Rogers, during her life, and upon her death to pay the principal sum to her lawful issue, said lawful issue " to have the same sum of money equally, share and share alike; the children of any of the lawful issue of my said daughter who shall have

* Affg. 134 Misc. 409; affd., 254 N. Y. ——.

died during her life to have between them the share of the parent so dying." The words " give, devise and bequeath " were used in the creation of this trust, and it will be observed that careful provision was made by the decedent for his grand-children, the children of his daughter Mary, since no part of the principal sum is to be paid to the life beneficiary. In the 6th paragraph of the will, erroneously numbered " Fifth," a trust fund of $25,000 was created for the benefit of his son William, which differed in some respects from each of the others. Provision was made for payment of so much of the principal to the beneficiary as the trustees " shall deem wise," but upon the attainment of the age of thirty-five years by this life beneficiary the principal, or so much thereof as shall remain unpaid, is to be paid to him. In creating this trust, the words " give, devise and bequeath " were used, as in the other two. It is important to observe that the testator's provision for his incompetent son and his daughter continued during their lives. Upon the death of the incompetent, the principal is to go to the incompetent's legal representatives, heirs at law or next of kin. Upon the death of Mary, the principal is to go to her lawful issue. Upon William's attainment of the age of thirty-five years, he is to receive the entire principal or the unexpended portion of it. But by a separate but unnumbered paragraph of the will following the 6th, it is provided, however, that should William die before attaining the age of thirty-five years, then the principal remaining in the hands of the trustees " shall be added to the moneys held in trust for my said children James McGowan and Mary Rogers, and shall be paid over to them, their issue, legal representatives, heirs or assigns as hereinbefore set out and provided." In the natural order of events, William will marry and children will come to him. But, under the terms of the will, if he die before reaching the age of thirty-five years, then his widow and his children, if any there be surviving him will receive no part of his share, which passes and becomes a part of the principal of the James and Mary trusts; this, notwithstanding the fact that William is to receive all if he attains the age of thirty-five years. Testator's solicitude for his grandchildren, Mary's children, was clearly manifested. By the decree of the learned surrogate all these legacies are made chargeable upon the real property of which the testator died seized. If these legacies be not so charged, then, as to the real estate, the testator died intestate, and the legacies, including the trust funds, necessarily abate. True, the sister, Lizzie McGowan, will be deprived of a large part of her legacy, the legacy for religious purposes will be very materially reduced, but the real estate will descend to the three children, share and share alike, and a possible injustice to William's children, if any be born to him, will be averted. In the last paragraph of the will the testator gives to his executors and trustees a naked power of sale, but it is to be observed that there is no direction to sell. Upon the trial the lawyer who drew the will and who now represents the executors in this proceeding, testified that he represented the decedent as his attorney during his lifetime and was consulted by him in the month of October, 1927, concerning the making of a will. The witness testified that he was one of the subscribing witnesses to the will, and objection was then made to his testifying further to conversations that, at the time he was retained to draw the will, the decedent told him that he had about $18,000 in personal property and equities in real estate of the value of between $70,000 and $75,000, the condition of the estate, substantially, as of the time of death. This objection was under sections 353 and 354 of the Civil Practice Act. Section 353

makes an attorney incompetent to disclose any communication between him and his client. Section 354 makes an exception, in this language: " But nothing herein contained shall be construed to disqualify an attorney in the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate from becoming a witness, as to its preparation and execution in case such attorney is one of the subscribing witnesses thereto." The surrogate, entertaining some doubt as to the admissibility of this evidence, took the testimony conditionally, over objection and exception, subject to the possibility of subsequently striking it out if he arrived at a different interpretation of section 354 of the Civil Practice Act. Thereupon, counsel for the petitioner, in cross-examination, and evidently for the purpose of testing the credibility of the witness, brought out a repetition of the testimony given in direct examination. Thereafter the learned surrogate sustained the objection and struck out the testimony given in direct examination, but allowed to remain the development of it upon cross-examination which, he stated in his opinion, was elicited without objection by any party. This attitude was erroneous in my opinion. Counsel for the petitioner did not intend to waive his right under the objection, but developed the transaction in the cross-examination subject to the eventual ruling by the court. If the learned surrogate was right in striking out the direct examination, as I think he was, then all of it should have been stricken out. This was not a probate proceeding. *Baumann* v. *Steingester* (213 N. Y. 328) was an action to construe a will. The attorney who drew the will and subscribed as a witness was called to testify as to conversations between him and the testator in the presence of a third person at the time the will was drawn. The trial court ruled out the evidence. The Appellate Division affirmed the trial court. In the Court of Appeals it was argued that the testimony was properly excluded under sections 835 and 836 of the Code of Civil Procedure (predecessors of sections 353 and 354 of the Civil Practice Act). The Court of Appeals reversed both courts and held that this testimony should remain, not under the provisions of sections 835 and 836 of the Code of Civil Procedure, but under the rule that the conversation, having been had between an attorney and his client in the presence of a third party, was not confidential. *Dwight* v. *Fancher* (217 App. Div. 377) was also an action to construe a will. The attorney who drew the will and signed as a subscribing witness was called to testify to personal transactions with the decedent. The trial court ruled this testimony out, but it was printed in the record on appeal. The Appellate Division in its opinion said that it thought the attorney " was a competent witness," but said further, " Either with or without the testimony of Mr. Simpson the construction asked for by plaintiffs cannot be given to the will," and it affirmed the trial court. Upon appeal (245 N. Y. 71) the judgment was affirmed, but the court said: " We do not pass upon the question of whether the attorney was a competent witness in this action. (Civ. Prac. Act, §§ 353, 354.) The evidence would not be admissible though given by a witness who was competent." Of course, if the evidence were properly in the record, there would be a strong presumption that the testator intended a conversion. Without that testimony, there is a presumption that when the testator drew the will he believed that he had sufficient personal property to pay the legacies and set up the trusts. But, aside from all that, the learned surrogate is of opinion that there are other elements in the case sufficient to justify a conversion. *Livingston* v. *Ward* (247 N. Y. 97) is authority for no other rule of

law applicable to the present case than "that a disposition in one clause of a will may aid in arriving at the testator's meaning in another." It is true that in providing for the legacies, exclusive of the trusts, the testator did use only the words "give and bequeath," while in the creation of the trusts he used the words "give, devise and bequeath." The words used are of legal import, and a testator, unless the words are explained to him, ordinarily does not know the legal distinction between "bequeath" and "devise." I doubt the adequacy of the latter expression, as contrasted with the former, in the absence of other and controlling reasons, to include a devise of real property. In *Scholle* v. *Scholle* (113 N. Y. 261) the disposition of the residue of the estate was made by the creation of a trust consisting of both real and personal property. The words used were "devise and bequeath." An attempt was made to have a construction placed upon the will which would require a conversion of the land into money, and the difference in the use of the words "give and bequeath" by the testator in disposing of his personal property and the words "devise and bequeath" in the residuary clause was recognized by the court "not to be accidental, but intentional, and to indicate the testator's expectation that land, as such, would pass in the remainders." I recognize that it is one of the fundamental rules of construction of wills that a testator is presumed to have intended to dispose of his entire property, and that intestacy will be avoided if at all possible. Of course, the fact that there is no residuary clause in this will is an indication that the testator intended a complete disposition of his estate. Then, too, the power of sale is of assistance in determining whether or not it was the testator's intention that his real estate was to pass by the will. In the case of *Dunham* v. *Deraismes* (165 N. Y. 65), cited by the surrogate, the court recognized the rule as laid down in earlier cases. I think it might be well to quote from the opinion of the court, written by Judge CULLEN, which bears not only upon the effect of the power of sale, but also upon the other questions of law here involved: "It is doubtless true that the personal estate of a testator is not only the primary, but the sole, fund for the payment of legacies, unless the testator has charged such payment upon his realty either exclusively or in aid of the personalty. That intent must be manifested by the will itself, or in certain cases may be made to appear by proof of extrinsic facts, such as the condition of the testator's estate at the time he made the will. (*McCorn* v. *McCorn*, 100 N. Y. 511; *Briggs* v. *Carroll*, 117 id. 288.) In the present case there is no proof of any inadequacy of the personalty to satisfy the plaintiff's annuity and the other legacies. Therefore, for the plaintiff to succeed in his claim, reliance must be placed on the face of the will. It is not necessary, however, to charge a legacy on the realty that there should be express direction to that effect in the will; it is sufficient if such be the intent of the testator to be gathered from all its provisions. (*Taylor* v. *Dodd*, 58 N. Y. 335; *Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354.) In the two cases cited this court rested its conclusion that the testator intended to charge the legacies on the real estate on the presence in the wills then before the court of a power of sale of the real estate given to the executors, for which there appeared in the will no other sufficient purpose. At the same time it has been held that the mere blending of the personalty and realty in a general residuary clause is not sufficient to charge the legacies on the realty. (*Brill* v. *Wright*, 112 N. Y. 129.)" For a general statement of the rule, and especially the effect of a power of sale in a will, I may revert to *Scholle* v. *Scholle* (*supra*), which I have

considered upon another point involved in the construction of this will. In that case, too, we find general rules which are of assistance to us. The following is from the opinion written by FINCH, J.: " There is in the will no imperative direction for the sale of the real estate. Indeed, there is no direction to sell at all. A power or authority to sell is given, but unless the exercise of that power is rendered necessary and essential by the scope of the will and its declared purposes, the authority is to be deemed discretionary, to be exercised or not, as the judgment of the executrix may dictate, and so an equitable conversion will not be decreed. (*White* v. *Howard*, 46 N. Y. 162.) To justify such a conversion there must be a positive direction to convert, which, though not expressed, may be implied; but, in the latter case, only when the design and purpose of the testator is unequivocal and the implication so strong as to leave no substantial doubt. (*Hobson* v. *Hale*, 95 N. Y. 598.) Where, however, only a power of sale is given without explicit and imperative direction for its exercise, and the intention of the testator in the disposition of his estate can be carried out, although no conversion is adjudged, the land will pass as such and not be changed into personalty. (*Chamberlain* v. *Taylor*, 105 N. Y. 194.) " In the will before us there is nothing to justify an imperative command. *Ely* v. *Megie* (219 N. Y. 112) is also authority for the holding that whether a legacy is charged upon the real estate of a decedent is always a question of the testator's intention. The language of the will is the basis of the inquiry, but extrinsic circumstances which aid in the interpretation of that language, and help to disclose the actual intention, may also be considered. The following is from the opinion (p. 127): " While the personal estate of a testator is the primary fund from which legacies shall be paid (*Taylor* v. *Dodd*, 58 N. Y. 335), ' Whether a legacy is charged upon the real estate of the decedent is always a question of the testator's intention. The language of the will is the basis of the inquiry, but extrinsic circumstances which aid in the interpretation of that language, and help to disclose the actual intention, may also be considered.' (*McCorn* v. *McCorn*, 100 N. Y. 511, 513, and cases cited.) The same principle is applied in *Bevan* v. *Cooper* (72 N. Y. 317); *Brill* v. *Wright* (112 N. Y. 129); *Briggs* v. *Carroll* (117 N. Y. 288); *Irwin* v. *Teller* (188 N. Y. 25). The case of *Fries* v. *Osborn* (190 N. Y. 35), relied upon by counsel, is distinguishable from the case at bar. In the *Fries* case the will there considered directed the payment of debts and funeral expenses, appointed an executor, gave to four several individuals five hundred dollars each and to three several beneficiaries three hundred dollars each. The question certified to this court was: 'Are the legacies * * * a lien and charge upon his real estate * * *.' The action was one of partition. The will did not make reference to real estate, neither was it asserted that the instrument contained ambiguous or contradictory language. This court held that evidence of extrinsic circumstances was inadmissible, as the same could not aid in an interpretation of the language of the will, which was neither obscure nor uncertain." *Fries* v. *Osborn* (190 N. Y. 35), considered in *Ely* v. *Megie* (*supra*), is authority for the rule that extrinsic evidence may be resorted to within certain limits and qualifications for the purpose of ascertaining the intention of the testator and is limited to the interpretation of something which is actually written in the will. To justify resort to this evidence there must be some provision therein which will serve as a subject for interpretation; and such evidence cannot be utilized under the guise of interpretation for the purpose of adding to the will provisions which otherwise are

not found there at all. It was there held that the testator died intestate as to his real estate. In that case the will provided for a general legacy in dollars and cents to designated beneficiaries. Dealing with the situation before it, the court (HISCOCK, J.) wrote (at p. 37): " From evidence, much of which was received over sufficient objections and exceptions, the court has found, amongst other things, that the testator left sufficient personal property to pay only a small portion of the legacies after satisfaction of debts; that at the time of making the will he knew the value of his personal property and the amount of his debts; that the father of the decedent's wife had advanced a thousand dollars on the purchase price of a farm deeded to testator and owned by him at the time of his death; that the latter had intended that his wife's relatives should be repaid by will or otherwise the sum so advanced with interest for many years; that the will was drawn by a person ignorant of the law relating to wills, and finally ' that the said testator * * * intended to and did charge the real estate with the payment of the legacies mentioned in his will.' Obviously the will under consideration does not expressly charge the legacies upon the testator's real estate. But the rule is invoked that extrinsic evidence may be resorted to for the purpose of showing an intention to so charge such legacies which will be binding in the construction of the will although express provision to that effect is wanting." The court then considered the rule to which I have referred and as established by the cases *Lupton* v. *Lupton* (2 Johns. Ch. 614, 623); *Bevan* v. *Cooper* (72 N. Y. 317, 322) and *McCorn* v. *McCorn* (100 id. 511, 513), and concluded with the following: " The testator has died intestate as to his real estate. His will does not touch it at all. There are no clauses relating to it which may be made the basis of interpretation and construction. We do not see how we are any more entitled upon the record presented to say that the will requires that the legacies be charged upon the unmentioned real estate than we would be entitled to read into the will a provision giving it in whole or part to the legatees named. Perhaps it may be assumed from the evidence and findings that this conclusion defeats what was really the expectation and intention of the testator. If that is so, of course it is to be regretted. But it will be only another illustration of the experience that no statute or rule, however wise and conducive to public welfare and safety in its general observance and application, can be so framed that it may not be made by ignorance and carelessness an occasional source of hardship in the individual case." True, in the *Fries* v. *Osborn* case (*supra*) the word " devise " was not used, and there was no power of sale. If the learned surrogate was right in striking out the lawyer's testimony in direct examination, and if I am right in holding that he should have stricken out the testimony given in cross-examination also, then, in so far as this record discloses, there is no proof of the value of the real and personal property at the time the will was made. To the contrary, it must be assumed that the testator had sufficient personal property on hand to pay the legacies and set up the trusts. There is no reference whatsoever in the will to real estate. There then remains in the record but the use of the word " devise " and the power of sale in support of the construction that a conversion was intended. I think that, under the authorities cited, this is insufficient. Allowing the will to stand as it was written, that is, without reading into it something that is not there, we have an equitable distribution of the major part of the estate among the testator's natural beneficiaries, who are his three children and their heirs. The son James,

being mentally incompetent, whose mind will never develop beyond that of a child of eight years, in all human probability never will have issue. Why, then, a distinction should have been made in the disposition of the remainder, in his case providing that it should, upon his death, go to his legal representatives, heirs at law or next of kin, and in the case of the son William, in the event of his death before reaching the age of thirty-five, providing that it be applied in enhancement of the other two trusts, thus practically disinheriting William's children, is difficult to understand. I think we should not read into this will something which is not to be found within its four corners and which may result in an inequitable distribution of this estate not intended by the testator. In *Matter of Knight* (196 App. Div. 355), a case involving the construction of a will, Judge MILLS, for this court, wrote (at p. 358): " Moreover I look upon it as elementary and axiomatic that, except in an entirely plain case, the court will not construe a will so as to cut off from inheritance or benefit any direct descendant of the testator. Such a construction shocks one's sense of natural justice and will be avoided if reasonably possible. (*Soper* v. *Brown, supra,* 136 N. Y. 244, 248.) " In *Matter of Harden* (177 App. Div. 831), a First Department case, Judge LAUGHLIN wrote (p. 835): " * * * it is a general rule with respect to the construction of wills that if a will is susceptible of two constructions, one of which will tend to inequality in the distribution of the estate between the children of the testator, and the other will tend to produce equality, the latter construction is favored." (Cases cited.) The same rule is expressed in the opinion of *Soper* v. *Brown* (136 N. Y. 244, 248), cited by Judge MILLS in *Matter of Knight* (*supra*). While *Matter of Rooker* (248 N. Y. 361) involves a construction affecting the rights of relatives and strangers, which, of course, is not true in this case, the court nevertheless held that the equities are to be considered. Judge ANDREWS there wrote (p. 364): " Of two doubtful interpretations, that favoring the blood of the testator rather than strangers will be adopted. Human nature usually so acts. A construction harmonizing a clause and the law is to be preferred to one unauthorized. An intent to direct an illegal accumulation of income is not to be lightly inferred." The decree should be modified to conform to this opinion, with costs to each of the parties to be paid out of the estate.