In the Matter of the Estate of JOSEPH BATTELL, Deceased.

Surrogate's Court, Kings County, February 2, 1940.

*Burke & Burke* [*Daniel Burke, Frederick F. Rehberger* and *Ernest F. Leathem* of counsel], for the Irving Trust Company and Robert T. Sheldon, as trustees of the trust for Ellen B. Stoeckel, petitioners.

*White & Case* [*Dudley Miller* of counsel], for Rosa E. Tuttle, respondent.

*Duer, Taylor, Wright & Woods* [*John F. Woods* of counsel], for Isabel B. Griswold, respondent.

*Alexander & Green* [*Clifton P. Williamson* of counsel], Evelyn Humphrey, Irene B. Moffatt, Mary E. Alger Murphy, Jessica S. Swift and Philip B. Stewart, respondents.

*Bouvier & Beale* [*John Vernou Bouvier* and *C. G. Huffman, Jr.,* of counsel], for Katherine H. Swift, respondent.

*Lennox C. Brennan*, special guardian for unknown distributees.

WINGATE, S. Certainly one, and potentially two, interesting questions of conflict of laws are involved in the present proceeding for interpretation of the will of this testator, which was executed in New York State on February 27, 1868, and admitted to probate in this court on August 11, 1874.

By the second paragraph of the " thirteenth " item, the testator erected a trust for the life of his niece, Ellen B. Stoeckel, who was, at the time of the execution of the document, a resident of the State of Connecticut and who died, domiciled in that State, on May 5,

1939. The present problems concern the method of devolution of the remainder of this trust.

The directions of the testator in this regard read: " And at * * * her death, to assign, transfer and pay over the same to * * * her lawful issue if any there shall be then living: And if there be no such issue then living, then and immediately upon the decease of such * * * niece to assign, transfer and pay over the same to such person and persons as are *then* by law the lawful '*heirs-at-law*' of such nephew or niece and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece." (Italics in original will.)

The life beneficiary left no issue, wherefore, the interpretation is limited to the second quoted clause.

Four questions are potentially present respecting this directed devolution, namely, *first,* the time as of which the class gift to the heirs at law of the life beneficiary becomes effective; *second,* whether the membership of the class is determinable in accordance with the laws of Connecticut or those of New York; *third,* if of New York, what the applicable law of New York is; and *fourth,* the identity of the persons coming within the description of the pertinent statute.

The first question presents no difficulty. By the express, italicized, direction of the testator, the persons included in the class description of " heirs at law " of the life beneficiary are those who " are *then*," namely, on " her death," classifiable as such. Even in the absence of this unmistakable demonstration of express intention, the law would have achieved an identical result (*Teed* v. *Morton,* 60 N. Y. 502, 506; *Bisson* v. *West Shore R. R. Co.*; 143 id. 125, 129; *Matter of Allen,* 151 id. 243, 247; *Gilliam* v. *Guaranty Trust Co.,* 186 id. 127, 133; *Matter of Leonard,* 218 id. 513, 521; *Matter of Lyons,* 154 Misc. 368, 371; modfd., 245 App. Div. 548; modification revd., 271 N. Y. 204; *Matter of Weil,* 151 Misc. 841, 850; affd., 245 App. Div. 822; affd., 271 N. Y. 608; *Matter of Harned,* 138 Misc. 546, 548; affd., 234 App. Div. 796; *Matter of Salomon,* 159 Misc. 379, 381; affd., 251 App. Div. 740) by reason of the circumstances that no express gift is made to the remaindermen, that the sole donation is effected pursuant to a direction to divide and pay over, that the gift is to a class and that such class is to be composed of the heirs of a living person. Any one of these alone would constitute an indication of an intention that the recipients were to be determined only on the death of the life beneficiary. The cumulative effect of all four raises a very strong inference, indeed, to this effect.

The second question relates to whether the law of Connecticut or that of New York is controlling in determining the identity of the

distributees under the class description of "heirs-at-law of such nephew or niece." The only authority which the court has found which supports a determination in favor of application of Connecticut law is a statement of Professor Casner of the Harvard Law School in his scholarly article on "Gifts to 'Heirs'" in the December, 1939, issue of the Harvard Law Review (53 Harv. L. Rev. 207, 213). He there writes: "If the subject matter of the gift is land, the statute is the one in the State in which the land is located and if the subject matter is personal property, then the statute should be the one in the State in which the ancestor is domiciled."

Despite the categorical nature of the latter clause of this quotation, the learned author frankly admits in a note that "All the cases found by the writer appear to be inconsistent with the statement in the text." Such inconsistent determinations by courts of this State, as partially noted in the article, are *Matter of Winslow* (138 Misc. 672, 677; affd., 233 App. Div. 872; affd., 259 N. Y. 550); *Matter of Angarica* (157 Misc. 98, 100); *Matter of Devoe* (66 App. Div. 1, 6; affd., 171 N. Y. 281) and *Cary* v. *Carman* (116 Misc. 463, 470). (See, also, *Fell* v. *McCready*, 236 App. Div. 390, 394; *Dammert* v. *Osborn*, 140 N. Y. 30, 46; *New York Life Ins. & Trust Co.* v. *Viele*, 161 id. 11, 19; *Merritt* v. *Corlies*, 71 Hun, 612.) In all of these decisions it was determined that the statute of the State of the testator, and not that of the ancestor, was the proper criterion.

In the memorandum of the person who would benefit by the application of Connecticut law, the argument is advanced that a distinction should be drawn between the cited cases and the present by reason of the fact that in the several precedents in which the law of the testator's domicile was applied, the latter, and the pertinent ancestor, were both residents of the same State at the date of the execution of the will, whereas in the present, they were not.

Despite this difference in facts, the court is of the opinion that the law of the testator's domicile is that which should control. A somewhat analogous question was presented in *Matter of Dialogue* (159 Misc. 18, 21) in which this court observed that every citizen is charged with a knowledge of local law (*City of Buffalo* v. *Hawks*, 226 App. Div. 480, 484, 485; *Farmers L. & T. Co.* v. *Winthrop*, 207 id. 356, 371; modfd. on other grounds, 238 N. Y 477), and with the legal effect of the language used in a document. (*Matter of Wilkening*, 137 Misc. 451, 454; *Matter of Kelly*, 134 id. 399, 401.) This principle has been carried to the point of holding that existing law is to be read into the document with like effect as if it had therein been incorporated at length. (*McCracken* v. *Hayward*, 2 How. [U. S.] 608, 613; *Edwards* v. *Kearzey*, 96 U. S. 595, 601; *People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 361; *Matter of Cohen*,

149 Misc. 765, 769.) It has accordingly been held that "In discovering the intent of the testator a will should be construed in the light of the statutory enactments in view of which it must be supposed to have been made." (*Central Trust Co.* v. *Skillin*, 154 App. Div. 227, 232. See, also, *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127, 128; *Matter of Sheffer*, 139 Misc. 519, 522.)

This principle is succinctly stated by Professor Beale of Harvard (2 Beale, Conflict of Laws, § 308.1): "The interpretation of a will is not, strictly speaking, a legal question, but a question of fact. There is no occasion for interpreting language if it has a clear meaning without interpretation; and if interpretation is necessary the court looks at all circumstances surrounding the use of the language, of which the domicil of the user is one. One speaks, presumably, the language of his home, and the usage of his domicil is the principal element of interpretation; though of course not the only one."

The court accordingly determines both on reason and authority that the identity of the remainder distributees in the case at bar is determinable in accordance with the laws of the State of New York.

The question thereupon arises as to which law is to be employed in the determination of the identity of the persons entitled to take. This, in turn, involves two inquiries, namely, *first*, whether the testamentary language refers to those persons who would be entitled to take intestate realty or those to whom intestate personalty devolves; and, *second*, in view of the drastic alteration in the law respecting intestate devolution effected by chapter 229 of the Laws of 1929, as amended by chapter 174 of the Laws of 1930, whether the method of devolution operative in respect of intestates dying prior to September 1, 1930, or that in subsequent use is to be adopted.

The first step in this evaluation is the consideration of whether the descriptive designation "heirs-at-law," which was not only inserted by the testator, but was italicized and inclosed in quotation marks by him, should be given its technical legal connotation, namely, of a person who is entitled to inherit real property in intestacy, or whether it is capable of receiving the meaning commonly associated with the term "next-of-kin," that is, as indicating those entitled to devolutionary rights in personalty. The question is of considerable potential importance by reason of the different identities of such distributees under the statute in effect prior to September 1, 1930.

It is, of course, a familiar legal fact, that whereas these terms are frequently carelessly employed in equivalent senses, they have distinct and diverse technical legal connotations as hereinbefore noted. (*Cushman* v. *Horton*, 59 N. Y. 149, 151; *Matter of Bump*, 234 id. 60, 64; *Tillman* v. *Davis*, 95 id. 17, 29; *Matter of Barker*, 230 id. 364; *Matter of Nebe*, 155 Misc. 392, 394.)

It is, furthermore, a well-established principle of testamentary interpretation that in respect of a will which exhibits evidence of expert testamentary draftsmanship, words of art will be accorded their strict technical connotations in the absence of a demonstration that they were employed in a diverse sense. (*Overheiser* v. *Lackey,* 207 N. Y. 229, 233; *Adams* v. *Massey,* 184 id. 62, 70; *Matter of Cornies,* 150 Misc. 596, 598; affd., 242 App. Div. 703; *Matter of Meyer,* 162 Misc. 426, 428; *Matter of Dudley,* 168 id. 695, 697; *Matter of McGowan,* 134 id. 409, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513.)

The present will is replete with evidences of expert draftsmanship, wherefore, the principle must be deemed to apply.

The trust here in question was erected by the " thirteenth ' or residuary item of the will. It was to share, among other assets, in the remainders of six trusts, possessing principals of $50,000, in cash, each. This, in addition to other obvious indications, renders it apparent that the principal funds of the residuary trusts were intended to be composed of personal property. Despite this fact, the alternate remainder gifts were made to " the lawful ' *heirs-at-law* ' " of the several life beneficiaries " in such shares * * * as they would by law inherit (as heirs at law)." (Italics in original will.) The repeated use of the technical term " heirs-at-law " and even more, its italicizing and inclosure in quotation marks by the testator, is explicable only on the supposition that he wished to impress upon all concerned his desire that the recipients should be those persons only who complied with the familiar technical appellation of " *heirs-at-law.*" It follows that the clause in question must be interpreted as conferring a potential benefit on those only who would be entitled to inherit real property in the event of intestacy and who were living at the death of the life beneficiary.

The next question for examination concerns the selection of the law by the application of which the remainder distributees are to be determined.

It is a fact familiar to all adepts in New York decedent devolution that the laws of descent and distribution were radically altered by chapter 229 of the Laws of 1929, as amended by chapter 174 of the Laws of 1930, effective on September 1, 1930. By the express terms of the act (§ 21), however, the amendments thus effected apply " only to the estates or wills of persons dying after August thirty-first, nineteen hundred and thirty; and the provisions of law affected by such sections in force prior to the taking effect of this act shall apply to the estates and wills of all persons dying prior to September first, nineteen hundred and thirty, with the same force and effect as if they were not hereby amended."

This brings up for consideration the decision of the Court of Appeals in *Matter of Waring* (275 N. Y. 6). In that case the will provided that on the death of the life beneficiary, who was testator's son, the trustees should pay the corpus of the trust to the " next of kin " of the son " according to the laws of the State of New York."

The court, in holding that the statutes in effect prior to September 1, 1930, controlled, said (at. p. 10): " The amendments are not retroactive. * * * It was not the estate of the son which passed at his death, nor did it pass by his will. The estate to be distributed at the death of the son was the estate of the father passing under the father's will. The Legislature has, by means of the saving clause, exempted from the operation of the other amendments to which reference has been made the distribution of an estate such as is involved in the case at bar, had they otherwise been applicable."

At page 13 the court intimates that under certain circumstances an exception may exist to the rule stated. This observation reads as follows: " Had the testator here said merely that the remainder should pass according to the laws of the State of New York in effect at the time of the death of the son, distribution under the provisions of section 83, subdivision 4, of the Decedent Estate Law might have been made. He did not say so, nor did he intend to so provide."

In the present case, whereas the life beneficiary was not survived by any spouse, the determination of the law which is to be applied will make an appreciable difference in the resulting distribution by reason of the fact that the surviving relatives of the life beneficiary are a single first cousin and six sets of descendants of deceased first cousins. The latter contend that the rule announced in *Matter of Waring* is here applicable, whereas the former asserts that the facts here disclosed bring the case within the noted exception.

Surrogate FOLEY has had occasion to pass upon both aspects of the matter, applying the rule itself in *Matter of Lake* (170 Misc. 840), and the exception in *Matter of Bound* (171 id. 591). The remainder gift under the will in the *Lake* case was given simpliciter " to the heirs-at-law of my said son." That in *Matter of Bound* provided: " I direct that the principal be disposed of according to the laws of inheritance and distribution of the State of New York."

It is, of course, obvious that the latter language complied exactly with the exception to the *Waring* rule, as hereinbefore quoted. In applying the exception, Surrogate FOLEY wrote (at p. 595 of the *Bound* opinion): " The court is without power to alter or amend this plain mandate of the will that the statutory class, including

his widow, should inherit. The court has no more authority to exclude the widow in this situation than it would have, if the testator made no disposition whatsoever of the remainder and the property had passed under the statutes of intestacy."

In the present case the directed recipients are the " ' heirs-at-law ' of such nephew or niece," which, if standing alone, would seem, *prima facie,* to bring the direction within the main rule of *Matter of Waring (supra)*. To this, however, the testator has added the words " and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece."

The assertion that the rule of *Matter of Waring (supra)* applies to the composite direction is the equivalent of an insistence that the last twenty words of the direction are meaningless in a determination of the testamentary intent. These parties, therefore, ask the court, in effect, to delete them entirely from the instrument. Whereas such authority exists in situations in which the act is in obvious furtherance of the testamentary intent, it has uniformly been branded as a dangerous expedient to be adopted only in extreme emergencies where otherwise order could not be evolved from chaotic expression. (*Matter of Buechner,* 226 N. Y. 440, 443; *Adams* v. *Massey,* 184 id. 62, 69; *Van Nostrand* v. *Moore,* 52 id. 12, 20.)

The principle of interpretation ordinarily applicable to wills and other documents alike, requires that, if at all possible, all words should be given effect (See authorities last cited and *Roseboom* v. *Roseboom,* 81 N. Y. 356, 359; *Fleischman* v. *Furgueson,* 223 id. 235, 239; *Sedlaczek* v. *deDreuzy,* 220 App. Div. 446, 450; *Kent* v. *Fisk,* 151 id. 279, 282; *Matter of Corlies,* 150 Misc. 596, 600; affd., 242 App. Div. 703), and all parts of the instrument fused into a harmonious whole. (*Trustees of Theological Seminary* v.*Kellogg,* 16 N. Y. 83, 86; *Eidt* v. *Eidt,* 203 id. 325, 328; *Livingston* v. *Ward,* 247 id. 97, 106; *Matter of Frech,* 220 App. Div. 126, 129; affd., 246 N. Y. 552; *Callahan* v. *Volke,* 220 App. Div. 379, 384; *Lynch* v. *Pendergast,* 67 Barb. 501, 506; *Matter of Van Brunt,* 159 Misc. 105, 109.)

That the last twenty words, which certain parties would have the court delete, not only possess meaning but that they furnish the key to the most difficult questions of interpretation propounded, appears to the court obvious from an analysis of the clause as a whole. This furnishes an answer to the three most important questions which are capable of being raised respecting the remainder distribution. These questions are, *first,* when the remainder is to be distributed; *second,* who is to participate in the distribution; and *third,* what portion or proportion of the whole each of the indicated recipients is to receive.

The first question, as to the time of distribution, is answered by the words: " immediately upon the decease of such * * * niece."

The second, as to the identity of the distributees, is indicated by the description: " such person and persons as are *then* by law the lawful ' heirs-at-law ' of such nephew or niece."

The third query, respecting the quantum of the benefit which is to be paid to each recipient, is clarified in the fir al twenty words. The principal fund is to be paid over " in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece."

As the court reads this language, it is difficult, if not impossible of misapprehension. If the recipients of the remainder were, in fact, inheriting as heirs at law from this niece, they would obviously receive only property which actually belonged to her at the date of her death and of which she had failed to make valid disposal. All property within this description which actually belonging to her would devolve pursuant to the provisions of the statutes of descent and distribution which were generally effective at the moment of her death, and in the precise " shares and proportions " therein specified. (*Read* v. *Williams,* 125 N. Y. 560, 570; *Barber* v. *Terry,* 173 App. Div. 469, 471.)

As thus clarified, it is obvious that the present testator intended, in effect, to dedicate the principal of the trust to Ellen B. Stoeckel. She was to have the benefit of its use during her life. If she left issue, the principal was to pass to them. If she had none, it was to devolve in the same manner as if she had actually been its owner at the time of her death.

The final direction, therefore, was a substantial equivalent of that to which reference was made in the exception in the *Waring* case and which was adjudicated in *Matter of Bound.*

Even were the contrary to be determined, however, and it were to be held that the main rule of *Matter of Waring* is here applicable, the result must be the same since even if the identity of the heirs at law were to be determined pursuant to the statute effective prior to September 1, 1930, yet, under the final twenty words of the clause, the persons so identified could receive distribution only in the shares and proportions specified in the later law. Such a construction would be analogous to that which would follow upon a direction that the remainder was to be distributed to all persons possessing any of the blood of the life beneficiary but that any of their number bearing a relationship to her more remote than that of first cousin should receive nothing.

It follows that the devolution pursuant to the questioned item is governed by section 83 of the present Decedent Estate Law. The controlling subdivisions are 6 and 10. The only claimants are a first cousin, Rosa E. Tuttle, and descendants of various deceased first cousins. Since representation is not "admitted among collaterals after brothers and sisters descendants" (Dec. Est. Law, § 83, subd. 10), it follows that Rosa E. Tuttle is entitled to receive the entire distributable remainder. (*Monroe* v. *Winslow*, 254 App. Div. 811; *Matter of Harned*, 138 Misc. 546, 549; affd., 234 App. Div. 796.)

It is an interesting coincidence that according to the demonstration of Connecticut law contained in the record, the ultimate result is identical with that which would have been attained had that law, instead of the law of New York, been determined to be applicable in determining the identity of the remaindermen.

Enter decree on notice in conformity herewith.