MARY I. ROGERS, Plaintiff, *v.* ASENATH ROGERS and Others, Defendants.

Supreme Court, Monroe County, July 22, 1940.

*Harris, Beach, Folger, Bacon & Keating,* for the plaintiff.

*Marsh & Snider,* for the defendants.

WHEELER, J. The attack on the first cause of action is upon the ground that plaintiff has not legal capacity to sue. In considering this question it is necessary to briefly analyze the history of this estate.

Hosea Rogers died on December 14, 1904, leaving a last will and testament dated November 20, 1901. His heirs and next of kin were Asenath Rogers, his widow, and five children, including a son, William H. Rogers. The will was offered for probate on January 3, 1905, and objections were filed by the son William. Thereafter Polly M. Rogers, a daughter, was appointed temporary administratrix of the estate, and she managed the same until her discharge in 1909.

Pending the temporary administration, and on June 1, 1905, the widow and all the children entered into a written agreement containing provisions for the distribution of Hosea Rogers' property. This agreement was acknowledged by all the parties, including William and his then wife, Carolyn D. Rogers, in 1906, and later in 1908 reacknowledged by two of the children who had then become of age.

This agreement provided that the estate should be administered by Asenath Rogers and Polly M. Rogers, the same executors named in the will, and that they should account as executors, the will thereafter having been admitted to probate.

The agreement also provided in paragraph " Fourth " that the so-called Warehouse street property (subsequently operated by William as the Genesee Lumber Company) should be held by Asenath and Polly in trust for William H. Rogers and his family. Under this trust they were to pay the net income " To William H. Rogers for his maintenance and support, and the maintenance and support of his family during the term of his natural life, and if his wife survive him, to use said income and profit after his death for the support and maintenance of his wife and family during the term of her natural life, and to convey the remainder thereof to such of his children, if any, as shall then be living. * * * In case William H. Rogers shall not leave any descendants him surviving, then such property shall at the death of said William H. Rogers and his wife, be divided among his heirs at the time of his death according to law.

A judicial construction of the above trust agreement must be had in order to determine whether or not the plaintiff has legal capacity to sue. It is the contention of plaintiff that she is entitled to take under the above trust as the surviving wife of William H. Rogers, and if she is defeated in this contention, she in any event will take as his heir.

On the date of this agreement (but not on the date of the will) William Rogers was married to Carolyn D. Rogers, who joined in its execution. Thereafter, in 1908, William and Carolyn were divorced, and subsequently, on January 9, 1909, William married Mary I. Rogers, the plaintiff in this action. William and Mary continued to live together until 1920, when William obtained a Nevada decree of divorce, in which action the plaintiff herein did not appear. It further appears that William married his third wife, Marie Bearer, who died in 1937, and that he again married Kathryn Sweeney, his fourth wife, in 1939, and that she was residing with him as his wife at the time of his death, which took place in the same year.

The first wife, Carolyn, released all her rights in and to the estate, and later died in the year 1920. The preliminary question as to whether Mary Rogers or Kathryn Sweeney Rogers was the lawful surviving spouse has already been determined by the official referee to whom the question was referred. The referee has determined that the plaintiff herein, Mary I. Rogers, is the lawful surviving spouse.

It is the claim of the defendants that the plaintiff Mary Rogers, the lawful surviving spouse of William Rogers, has not legal capacity to sue since, as they assert, she is not the wife, nor is she the heir of William Rogers, as contemplated by this agreement.

As already pointed out herein, Mary was not the wife of William at the time the trust agreement was made; on the contrary, he was then married to Carolyn, who was an actual party to the agreement.

The law seems to be well established that where a gift is given to the wife of a married man, it refers to the then wife, and not to one whom he may subsequently marry. (*Meeker* v. *Draffen*, 201 N. Y. 205.) In the *Meeker* case the Court of Appeals approved of the following language used by the Appellate Division in the same case (137 App. Div. 537–539): " Unless there be something in a will indicating the contrary, a gift to the ' wife ' of a designated married man is a gift to the wife existing at the time of the making of the will, and not to one whom he may subsequently marry."

It must, therefore, be held that Mary Rogers, the plaintiff, is not the " wife," as contemplated by the agreement.

However, there remains for consideration the question of whether Mary Rogers is entitled to take under this agreement as an heir of her husband William, in accordance with subdivision 3 of section 83 of the Decedent Estate Law.

The trust agreement provides: " * * * such property shall at the death of said William H. Rogers and his wife, be divided among his heirs at the time of his death according to law."

It is to be observed that a surviving spouse was not an " heir " prior to the amendment of chapter 229 of the Laws of 1929, amending sections 80 *et seq.* of the Decedent Estate Law. The question, therefore, is whether the law in effect prior to 1930 or that in subsequent use is to be adopted.

In *Matter of Waring* (275 N. Y. 6) it was held that the statutes in effect prior to September 1, 1930, control. In that case the will provided that at the death of a son, a life beneficiary, the trustees should pay the corpus of the trust to the " next of kin of said John, according to the laws of the State of New York." The court held that the amendments are not retroactive, and " furthermore by abolishing the distinction between ' next of kin ' and ' heirs at law,' the Legislature did not extend the class embraced within ' next of kin ' to include other than blood relatives. * * * The use of that expression [next of kin] by the testator to define and limit the class to whom the remainder of the trust should pass was intentionally and understandingly made and was distinctly to exclude the wife of the son."

The foregoing indicates the rule of the *Waring* case and the reasons for its adoption. However, the Court of Appeals in that case intimated (p. 13) that an exception may exist. " Had the testator here said merely that the remainder should pass according to the laws of the State of New York in effect at the time of the death of the son, distribution under the provisions of section 83, subdivision 4 of the Decedent Estate Law might have been made."

It seems clear that the language used in the case at bar, " be divided among his heirs at the time of his death according to law," is equivalent to the exception noted in the *Waring* case. The exception was applied by Surrogate FOLEY in *Matter of Bound* (171 Misc. 591), where the remainder was disposed of in the following language: " then I direct that the principal be disposed of according to the laws of inheritance and distribution of the State of New York."

Likewise the exception in the *Waring* case was held to apply in *Matter of Battel* (173 Misc. 273), where the gift was to the " heirs at law of such nephew or niece and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece."

The Fourth Department, in *Matter of Koch* (258 App. Div. 843), followed the main rule of the *Waring* case (*supra*) but this decision has recently been reversed by the Court of Appeals (282 N. Y. 462).

Since the decision in the *Waring* case, section 47-c of the Decedent Estate Law was added by chapter 181 of the Laws of 1938. This section provides that unless the " instrument shall expressly or impliedly declare otherwise, the terms ' heirs,' ' heirs at law,' ' next of kin ' * * * shall be construed to mean the distributees, including a surviving spouse." The Commission indicates that section 47-c was required because of the comment contained in the opinion in *Matter of Waring* (*supra*). It is also indicated that " the amendment is in line with the general purposes of the legislation in 1929 and 1930 designed better to protect surviving spouses." However, it would appear under the authority of the *Waring* case that section 47-c applies only to wills and *inter vivos* instruments executed after its enactment. (*Matter of Lake,* 170 Misc. 840.)

The meaning of the words used by the contracting parties in the instant case seem to be quite clear and definite. They provided for William and his family for their respective lives, also for William's descendants, if any. Beyond that point the language indicates that they were content to let the law take its course. There is no indication of any other intention. They must have been assumed to have known that the lines of inheritance were governed by statute, and at any time could be changed. (*Matter*

*of Canfield*, 256 N. Y. 610; *New York Life Insurance & Trust Co.* v. *Winthrop*, 237 id. 93.)

Also let it be remembered that we are not here called upon to construe the will of Hosea Rogers, the testator, but rather the contract which was designed to supersede the will in providing for the disposal of the estate. Under such circumstances we seek to find the intent, not of the testator, but of the sons and daughters who sought to divide up their father's estate to their own liking. Particularly should we be interested in the intent of William H. Rogers for whose benefit the trust was set up, and who was a party thereto. It would be strange indeed if he would have acquiesced in permitting all of this trust estate to be divided among his brothers and sisters to the complete exclusion of a subsequent wife who might become his surviving widow.

In view of the foregoing conclusions, the court must give effect to the plain mandate of the trust agreement that the statutory class, including William's widow, should inherit. It, therefore, follows that the widow, the plaintiff herein, has legal capacity to sue.

In view of these conclusions it would seem also to follow that as far as this first cause of action is concerned, the plaintiff has no interest in the estate of Hosea Rogers or in the trust of the Warehouse street property prior to the death of her husband, William H. Rogers. Consequently she, in her individual capacity, is not entitled to an accounting against the executors or trustees, and any such cause of action contained in the first cause of action herein must be deemed dismissed.

In her second cause of action plaintiff alleges that in the year 1915 the defendant Asenath Rogers sold a one-acre building lot to the plaintiff and her husband as tenants by the entirety for a valuable consideration; that said defendant " transferred and conveyed all her right, title and interest " in and to said one acre of land, and did surrender and deliver over possession thereof to the said William H. Rogers and plaintiff, his wife, and that thereupon the said William H. Rogers and plaintiff, his wife, became the owners in fee absolute thereof.

Plaintiff further alleges that she and her husband constructed a house upon the lot at a cost of upwards of $10,000, and she has been continuously in possession and control of the premises since the conveyance in 1915; that defendant has never delivered a deed " in confirmation of the conveyance."

Defendants contend that the action is barred under the provision of the Statute of Frauds. This is not an action to enforce a contract to convey real property. On the contrary, plaintiff alleges a completed transaction which resulted in vesting the title in plaintiff.

Assuming, as we must, the truth of plaintiff's allegations, it appears that plaintiff has enjoyed the possession of the property for over twenty-four years, in open adverse possession under claim of title; that plaintiff and her husband have spent large sums of money in improving the property. If it now appears that defendant is the title owner of the property, clearly it is a situation of unjust enrichment, leaving plaintiff with equities which should be protected. The circumstances give rise to a constructive trust between parties in confidential relation with each other.

It is well-settled law that the Statute of Frauds does not obstruct the recognition of a constructive trust affecting an interest in land where a confidential relation would be abused if there were a repudiation, without redress, of a trust orally declared. (*Foreman* v. *Foreman*, 251 N. Y. 237; *Sinclair* v. *Purdy*, 235 id. 245, 253.) " It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion." (*Sinclair* v. *Purdy, supra.*)

Neither can it be said as a matter of law that the action is barred by the Statute of Limitations. There is a substantial dispute as to the application of this statute which necessitates a trial of the issue thus raised.

In the third cause of action it is alleged that in the year 1927 Asenath Rogers " transferred and conveyed all her right, title and interest " in property located at Sagamor drive to William H. Rogers, and " that thereupon said William H. Rogers became the owner in fee simple absolute thereof."

This is not an action for specific performance. Plaintiff seeks to have it declared that as surviving spouse she has an interest in this property. Such an action, unlike an action in specific performance, need not be brought in the name of a representative of William H. Rogers' estate. The motion to dismiss should be denied for the same reasons as have already been discussed under the second cause of action.

The fourth cause of action is based upon fraud. It is alleged that plaintiff was induced to release her inchoate right of dower by joining in a deed with her husband, whereby his entire interest in his father's estate was conveyed to a corporation known as " The Hosea Rogers Estate " formed for the purpose of holding the real estate of that estate. This deed was executed and delivered in 1909. The interest of William H. Rogers was represented by 166 shares of the capital stock which were duly issued to him.

It is alleged that plaintiff was informed by the defendants Asenath Rogers and Polly M. Rogers and their attorneys that the purpose of forming the corporation was for convenience in managing

the real property, and that the 166 shares of stock about to be issued to William Rogers "would fully and adequately protect the plaintiff in all of her rights and interest and inchoate right of dower in the said properties;" that said representations were false, and were relied upon by plaintiff.

Plaintiff also alleges that prior to 1926, when plaintiff brought an action of separation against her husband, a plan, scheme or conspiracy was made and entered into between William H. Rogers and the defendants Asenath Rogers and Polly Rogers to transfer and convey all the property of William H. Rogers without consideration therefor to the defendants Asenath Rogers and Polly M. Rogers for the express purpose of defeating the inchoate right of dower and the other rights of plaintiff in her husband's property; that in furtherance of said plan or plot, William H. Rogers turned over to the said defendants the 166 shares of stock without adequate consideration; that this transfer was made to defendants to be held by them for William H. Rogers, and that there was never the intention that said transfer should be an absolute conveyance; that William H. Rogers died seized and possessed of said 166 shares of stock.

Defendants move for a dismissal of the fourth cause of action on the grounds:

(1) That the plaintiff has not legal capacity to sue.

(2) That the cause of action is barred by the Statute of Limitations.

(3) That the claim has been released.

(4) That the complaint does not state facts sufficient to constitute a cause of action.

For the same reasons already stated, it must be held that the plaintiff has legal capacity to sue. She seeks to have her rights declared, and to ascertain whether or not the defendants are wrongfully or illegally holding any of her husband's property. If on an accounting such appears to be the case, the court would undoubtedly order such property turned over to an administrator rather than to the plaintiff individually.

The question of the Statute of Limitations involves issues of fact which cannot be properly determined by these conflicting affidavits. In any event, this court is of the opinion that plaintiff had no vested interest which would entitle her to an accounting until the death of her husband.

The defendants maintain in their affidavits that the executors were released by an alleged release made by William H. Rogers, together with all the other members of the family, on February 9, 1909, the date on which the corporation acquired the real estate.

It is to be observed, however, that the alleged release runs to the defendants as executors only, and not to them under the terms of the agreement. No accounting has ever been had, and there are allegations on the part of the plaintiff that the executors continued to function as such for many years after the execution of the said release. This too presents a question of fact for the trial court.

Neither does it appear that this cause of action does not state facts sufficient to constitute a cause of action. Every fair inference and intendment must be made in favor of the pleading, and the facts alleged in the complaint assumed to be true. An examination of the affidavits served by both sides reveals that there are direct conflicts and contradictions involving many material allegations of fact. It would indeed be a hazardous and presumptuous undertaking for any court to attempt a decision of these involved and complicated issues of fact by relying upon the affidavits now before the court. The issues must necessarily be determined upon the trial of the case.

It seems reasonably clear that the alleged fourth cause of action contains two separate causes of action. The first relates to the alleged fraud practiced by defendants upon plaintiff at the time plaintiff released her inchoate right of dower by joining in the deed with her husband to the corporation in 1909. The second involves the alleged conspiracy to transfer the 166 shares of stock, which occurred many years later. These two causes of action should be separately stated and numbered. The motion to dismiss the various causes of action, to strike out certain allegations, and to separately state and number the separate causes of action, except as above noted, is hereby denied with order to enter accordingly.